## ORABONA v. CLARK et al.
### No. 2454.

District Court, D. Rhode Island.
Oct. 22, 1931.

Benjamin Cianciarulo, of Providence, R. I., for petitioner.

George R. Beane, Asst. U. S. Atty., of Providence, R. I., for respondents.

LETTS, District Judge.

This is a petition for a writ of habeas corpus for the discharge of one James Orabona now serving a sentence in the Rhode Island state prison, and who, under the terms of a conditional parole, is about to be deported pursuant to a deportation order issued by the Secretary of Labor.

The petitioner was born in Italy, and came to this country with his parents when a small child in 1911.

In 1922, while the petitioner was still a minor, the grand jury in the superior court for the counties of Providence and Bristol, in the state of Rhode Island, returned two indictments charging the petitioner with "assault with intent to murder." Both of these indictments arose out of a single occurrence.

The petitioner became involved in a brawl with other men while in a so-called bar and pool room. They had all been drinking, and at the culmination of the quarrel one of the other men drew a gun and another seized some instrument of combat found in the room. Orabona, who was also armed, began to shoot while making his retreat. Two men were wounded. Each indictment charges a separate offense of assault upon one of the two men.

A few months after the return of these indictments, the petitioner pleaded nolo contendere to both. Upon one he was sentenced to serve four and one-half years in the state prison and upon the other he was granted a deferred sentence. Of the four and one-half year sentence Orabona served something more than three years, and was then released upon parole.

In October of 1927 the petitioner was again indicted, charged with an assault upon a police officer. To this indictment he pleaded not guilty, and, after a trial lasting some four days, the jury returned a verdict of acquittal. The judge who presided at that trial did, however, after its conclusion impose a sentence of seven years in the state prison under the indictment returned in 1922, upon which sentence had then been deferred.

I venture no comment upon the action of the state court, following the verdict of acquittal in respect to the charges preferred in 1927, in imposing the seven-year sentence under the old indictment which was based upon the same set of facts as the one under which the defendant had already served a term of imprisonment. It is to be assumed that the state court was in possession of information in addition to that presented in the trial wherein the jury acquitted.

We may concede that the defendant is probably an undesirable character, of whom the community would be well rid by presenting him to Italy, irrespective of the fact that he was admitted to the United States while a small child, and is, in so far as his character has been shaped by environment, the product of the United States, and to that extent our, not Italy's, responsibility. But, however undesirable the petitioner may be, and however seemingly easy to rid ourselves of him, that solution faces neither our responsibility nor the petitioner's legal rights.

The provision of the statute (39 Stat. 889, § 19 [8 USCA § 155]), under which

the petitioner has been ordered deported, is in part as follows:

"* * * Any alien * * * who is sentenced more than once to such a term [one year or more] of imprisonment because of conviction in this country of any crime involving moral turpitude, committed at any time after entry * * * shall, upon the warrant of the Secretary of Labor, be taken into custody and deported. * * *"

The petitioner has been twice sentenced to terms of imprisonment for more than one year. It seems clear,' under the decisions, that the assault committed by the petitioner in December of 1922 comes, irrespective of his minority, within the definition of a crime involving moral turpitude. The only question presented under the limited scope of judicial review of the action of the Department of Labor is this: Can Orabona, having been in this country more than five years, be deported under authority of the statutory provision above quoted, having twice been sentenced upon charges growing out of a single occurrence? In other words, in respect to those persons who have been in this country more than five years, must there be, to justify their deportation, two separate and successive outbreaks of moral turpitude?

In the case of Johnson v. United States ex rel. Pepe (C. C. A.) 28 F.(2d) 810, 811, the court had before it, upon appeal, the application of one who had pleaded guilty to charges of statutory arson, laid in nine counts. These charges related to distinct offenses committed on different dates and at different buildings. The petitioner had been sentenced upon four counts, each for a period of one year or more, the sentences to run consecutively. It was held he was subject to deportation under the same provision of the statute which is here involved. In that case Swan, C. J., in part said:

"* * * It is reasonable to differentiate between an alien who has committed a single offense and one who has repeatedly offended. There would be no reason to make the classification turn on mere formalities of criminal procedure. Whether two crimes shall be prosecuted in two counts of a single indictment or information, or in separate indictments and with separate trials, depends upon considerations of convenience and expedition in judicial administration which can have no relation whatever to a classification of aliens for deportation. Under the relator's contention the prosecuting official of Connecticut may determine, by

the mere form in which he prosecutes an alien who has committed two offenses of the same character, the latter's liability to deportation. Such an intention should not be attributed to Congress unless the statutory language compels it. It clearly does not. * * *"

In a somewhat similar case in the Ninth Circuit, Nishimoto v. Nagle (C. C. A.) 44 F.(2d) 304, 306, involving the issuance of a series of bad checks (a felony under California law), the deportation of an alien was also upheld. In that case Wilbur, C. J., said:

"* * * The purpose of Congress was to permit and require deportation where an alien, within five years of his entry into the United States, had committed a single crime involving moral turpitude, or after five years had committed more than one crime involving moral turpitude for which he had been sentenced to a term of imprisonment, committed at any time after entry. It will be observed that the statute does not limit the power of deportation to a second conviction, but is based upon the commission of a number of offenses for which the alien has been sentenced. The form of the sentence is obviously of no consequence. The purpose of Congress undoubtedly was to provide for the deportation of a man who committed more than one offense involving moral turpitude for which he had been convicted and upon which conviction and sentence has been imposed; whether the sentence run concurrently or consecutively is entirely immaterial from the standpoint of the purpose of the law. * * *"

The statement of facts in the latter case does not indicate over what interval of time the several checks had been issued.

The case of Opolich v. Fluckey (D. C.) 47 F.(2d) 950, turns upon a different point. The court, however, in that case makes the following observation:

"* * * And in my opinion Congress had in mind what are commonly called 'repeaters,' that is to say, persons who commit a crime and are sentenced, and then commit another and are sentenced again. * * *"

It is wholly consistent with the holding in both the Johnson and Nishimoto Cases to interpret the purpose of Congress as expressed in the statute as being to authorize the deportation of persons who have been in this country more than five years only when on two separate occasions after entry they shall, in their behavior, have exhibited

a baseness of character amounting to moral turpitude resulting in consequences sufficiently serious to warrant the imposition of the substantial sentences mentioned. I do not believe it was the intent to authorize the Secretary of Labor to order deported an individual such as the petitioner in this case, who, in a single episode, a single mental derangement having a multiple result, had exposed himself, through the niceties and formalities of criminal procedure, to two specific charges.

I am mindful that those who believe in exiling our undesirable aliens, though received here as infants, and foisting them upon the countries of their racial nativity, can argue that, as each of the men whom the petitioner wounded was presumably wounded with a different bullet, requiring a separate act in its discharge, there were here presented independent crimes and independent acts of viciousness meeting all requirements of the statute, even under the interpretation here adopted. The hair-splitting mind can always find hairs to split, but such a course is conducive neither to an understanding of human behavior nor justice.

It is true that an instant of time presumably elapsed between shots, and in that sense each was mechanically a separate act. Moral turpitude, however, is not a matter of mechanics. It is a state of mind or character; the act done being indicative only of the moral condition.

Writ may issue, but not interfere with the custody of the state, pending an opportunity for its board of parole to reconsider its action already taken. Should the parole be made unconditional, the petitioner will be committed, without bail, pending full opportunity for the United States to have this decision reviewed upon appeal.