## TECCHIO v. WALLACE.
### No. 271.

District Court, N. D. Georgia, Atlanta Division. July 25, 1932.

A. L. Henson, of Atlanta, Ga., for petitioner.

Hal Lindsay, Asst. U. S. Atty., of Atlanta, Ga., for respondent.

UNDERWOOD, District Judge.

Petitioner, who is thirty-two years old, came to the United States from Naples, Italy, in 1921. Since then he has lived here, has married a citizen of the United States, and has three children of the ages of four, six, and eight years, all of whom were born in this country. All of petitioner's near relatives live in the United States.

On April 1, 1929, he was, after conviction, sentenced, on an indictment of four counts, "for the term of two years on first count of the indictment, and two years on second count, not to run concurrently; also two years on third count and two years on fourth count, to run concurrently with sentence on first and second counts, making four years in all, terms to commence this day."

In the first count petitioner was charged with attempting to utter and pass upon one Morris Mundez a counterfeit Federal Reserve Note of the denomination of $5; in the second count, with uttering and passing upon Herman Sandler a counterfeit Federal Reserve Note of the denomination of $10; in the third count, with uttering and passing upon Sam Sandler a counterfeit Federal Reserve Note of the denomination of $5. All of said three transactions were alleged to have taken place on January 15, 1929. In the fourth count petitioner was charged with uttering and passing upon Mary Scatuorchic, on December 27, 1928, a counterfeit Federal Reserve Note of the denomination of $5.

Petitioner, having served the above-mentioned sentences imposed upon him by the District Court of the United States for the District of New Jersey, was taken into custody, upon his discharge from the United States penitentiary at Atlanta, Ga., by respondent for deportation pursuant to section 19 of the Immigration Act of February 5, 1927 (8 USCA § 155), which provides that "any alien who, after February 5, 1917, is sentenced to imprisonment for a term of one year or more because of conviction in this country of a crime involving moral turpitude, committed within five years after the entry of the alien to the United States, or who is sentenced more than once to such a term of imprisonment because of conviction in this country of any crime involving moral turpitude, committed at any time after entry," shall be deported.

The sole question presented in this case is whether or not petitioner has been "sentenced more than once," within the meaning of the above quoted language of section 19 of the act.

The courts have found considerable difficulty in determining what Congress meant by the expression "sentenced more than once," and have differed in their construction of the law.

The question has not been passed upon by the Circuit Court of Appeals for this cir-

cuit, but was considered by Judge Sibley, when District Judge of this district, in the case of Opolich v. Fluckey, 47 F.(2d) 950.

In the Opolich Case the applicant was charged with four connected crimes of counterfeiting and "the judge sentenced him to a fine and two years in the penitentiary without specifically stating which counts the sentence was upon or whether it was upon each of them, but simply stated that the service was to be concurrent." (Page 950 of 47 F.(2d)

In the opinion, Judge Sibley said that technically the accused "committed four crimes, notwithstanding they were connected together and apparently in the same scheme of counterfeiting. Possibly he may be said to have been sentenced for all four, but it seems to me a great strain of language to say that he has been sentenced more than once. And in my opinion Congress had in mind what are commonly called 'repeaters,' that is to say, persons who commit a crime and are sentenced, and then commit another and are sentenced again. These last I think were the persons who were intended to be deported, notwithstanding they may have been residents of this country for more than five years." (Page 950 of 47 F.(2d)

In the case of United States v. Day, 51 F.(2d) 1019, the Circuit Court of Appeals for the Second Circuit say that: "A counterfeiter may be indicted, as here, in one count for possessing a bill, and in another for passing it, though he cannot pass it without having possession. In each case two crimes are charged, and judges have indeed been found willing to impose consecutive sentences in such cases. But ordinarily a judge will dispose of all the counts at once, since there has been really only one offense. Yet if the government is right, the alien must be deported. We cannot ascribe to Congress a purpose to stake so grave a consequence on verbal tricks, or to put vital interests in peril on a prosecutor's whim." (Page 1021 of 51 F.(2d)

In the Day Case there were two indictments, one in a single count and the other in two, upon each of which he was sentenced generally to a term of seven years, the "sentence to 'run concurrently.'" The first indictment was for possessing, on April 21, 1925, a counterfeit $20 bill with intent to defraud. The first count of the second indictment was for abetting, along with others, on April 20th, one Bernard Prince, in passing another $20 bill. The second count

of the same indictment was for abetting, on April 21st, along with others, one Helen Prince in passing three $20 bills with intent to defraud. The court held that "morally the transaction was a single wrong, to be expiated by a single punishment, and the judge seems so to have regarded it." (Page 1021 of 51 F.(2d) The writ was granted and the petitioner discharged.

In the case of Orabona v. Clark, 53 F.(2d) 101, 102, where the petitioner, in one altercation, shot two men and was indicted for each offense, in separate indictments, the District Court of Rhode Island held that petitioner was not subject to deportation, although prosecuted on both indictments and sentenced on one to serve four years and a half and upon the other, after revoking a deferred sentence, to serve a term of seven years. The court held, quoting Nishimoto v. Nagle (C. C. A.) 44 F.(2d) 304, 306, that "whether the sentence ran concurrently or consecutively is entirely immaterial from the standpoint of the purpose of the law." The District Judge further expressed the opinion that "I do not believe it was the intent to authorize the Secretary of Labor to order deported an individual such as the petitioner in this case, who, in a single episode, a single mental derangement having a multiple result, had exposed himself, through the niceties and formalities of criminal procedure, to two specific charges." (Page 103 of 53 F.(2d)

On the other hand, the Circuit Court of Appeals for the Ninth Circuit, in the case of Nishimoto v. Nagle, 44 F.(2d) 304, held separate sentences upon conviction of an alien on five different counts in an indictment charging the issuance of five separate checks with intent to defraud, but "with sentences to run concurrently," constituted more than one sentence, and authorized deportation under the Immigration Act. The court said that "whether the sentence run concurrently or consecutively is entirely immaterial from the standpoint of the purpose of the law." (Page 306 of 44 F.(2d)

The Circuit Court of Appeals for the Fourth Circuit, in the case of Tassari v. Schmucker, 53 F.(2d) 570, similarly held that an alien, who was tried and sentenced on November 16, 1917, for unlawful entry of a store of one Slotsky, and on January 18, 1918, was tried and sentenced, upon a separate indictment, for unlawfully entering into a store of one Beerman, was sentenced more than once, though the second sentence was made to run concurrently with the first,

and that petitioner's deportation was authorized under the Immigration Act. The court said "as the crimes were separate and distinct and successive, and the sentences likewise separate and distinct, the alien is clearly brought within both the language and the intent of the statute." (Page 573 of 53 F.(2d)

There are other cases, but the foregoing are the most important. The case of Johnson v. U. S. ex rel. Pepe (C. C. A. 2d) 28 F.(2d) 810, was, by the same court, considered and distinguished in the case of United States ex rel. Mignozzi v. Day, supra.

I am inclined to the more liberal views expressed in the Opolich, Orabona, and Day Cases, supra. The instant case, however, goes one step further than these cases in that sentences in it were imposed separately on the four counts, though two run consecutively with the other two.

Nevertheless I think the reasoning in the above three mentioned cases may well be extended to cover the case at bar. We are not seeking to preserve the niceties of procedure, but to ascertain the reasonable intent of Congress.

It appears from the record in this case that petitioner was not a "repeater," as defined in the Opolich Case, but that the offenses charged in the four counts arose out of "a single crime, procedurally proliferated" (United States v. Day, supra), "a single episode, a single mental derangement having a multiple result." (Orabona v. Clark, supra.)

The deportation of petitioner will uproot all the associations which he has formed by marrying and establishing a home and rearing a family in this country, and result in separating him from his family and friends. While, of course, a judge cannot consider such matters where the law is plain and requires him to act, however harsh such action may be, yet it is proper for a judge to consider these things in determining what Congress meant by ambiguous language, and such consequences "we may properly scrutinize with some jealousy, and insist that logic shall not take the place of understanding" (United States v. Day, supra, page 1021, of 51 F.(2d), in arriving at a reasonable construction of the act in question.

It is held, therefore, that the record in this case does not show that petitioner has been sentenced more than once as these words are used in the Immigration Act. An order has been entered discharging him.