**MALTEZ v. NAGLE, Commissioner of Immigration.**

Circuit Court of Appeals, Ninth Circuit.
August 20, 1928.

No. 5370.

1. **Aliens ⬦⟹54(6)—Warrant for arrest held not fatally defective for failure to state time and place of acts charged, where alien received copy of statements on which warrant was issued.**

Warrant for arrest of alien for managing house of prostitution was not fatally defective for failure to state time and place of acts of immorality charged, where defendant in advance of hearing was supplied with copy of sworn statements on which warrant was issued, particularly advising him of acts charged, thus preventing any claim of surprise.

2. **Aliens ⬦⟹54(8)—Decree closing alien's restaurant under Prohibition Act was immaterial, in proceedings to deport alien for managing house of prostitution.**

In proceedings for deportation of alien on ground that he managed house of prostitution, or shared in earnings of prostitute, decree under National Prohibition Act (27 USCA), closing his restaurant, was immaterial.

3. **Habeas corpus ⬦⟹56—Averments of habeas corpus petition, dismissed on demurrer, are deemed true.**

Where petition for habeas corpus is dismissed on demurrer, averments thereof must be deemed to be true.

4. **Aliens ⬦⟹54(10)—Refusal on deportation hearing to produce for cross-examination persons whose ex parte statements were relied on deprived alien of fair trial.**

In deportation proceedings, based on warrant of arrest of alien for managing house of prostitution, refusal of immigration officers to produce for cross-examination persons by whose ex parte statements the charge was supported deprived alien of fair trial.

5. **Aliens ⬦⟹54(10)—Refusal to permit alien's cross-examination of witnesses, whose ex parte statements were used in deportation proceedings, rendered trial unfair, though no demand to cross-examine was made until after hearing.**

Even if alien in deportation proceeding, after arrest for managing house of prostitution, failed to make formal demand for opportunity to cross-examine witnesses, on whose ex parte statements warrant of deportation was based, until after hearing, failure to permit alien's cross-examination of witnesses after written demand subsequent to trial, and while the witnesses still remained available before their deportation, rendered proceedings unfair.

Appeal from the District Court of the United States for the Southern Division of the Northern District of California; Frank H. Kerrigan, Judge.

Habeas corpus proceeding by Louis Maltez, opposed by John D. Nagle, as Commissioner of Immigration at the Port of San Francisco. From a judgment dismissing the petition, petitioner appeals. Reversed, with directions.

Clarence A. Linn, of San Francisco, Cal., for appellant.

Geo. J. Hatfield, of San Francisco, Cal. (T. J. Sheridan, of San Francisco, Cal., of counsel), for appellee.

Before RUDKIN, DIETRICH, and HUNT, Circuit Judges.

DIETRICH, Circuit Judge. Appellant, an alien, is held for deportation upon a finding of the immigration officers that he was managing a house of prostitution, or a resort habitually frequented by prostitutes, and was receiving, sharing in, or deriving benefit from the earnings of a prostitute. The warrant for his arrest containing such charges was issued May 2, 1926, and the warrant for deportation September 29, 1927. In the court below a demurrer, for insufficiency, to his petition for a writ of habeas corpus, with which he exhibited the entire administrative record, was sustained, and from the ensuing judgment of dismissal he appeals.

[1] It is first contended that the warrant for arrest was fatally defective, in that it charges several different kinds of immorality, and specifies neither time nor place. Subject to criticism it may be, in that it fails to state time or place; but appellant suffered no prejudice. In advance of the hearing he was supplied with a copy of the sworn statements upon which it was issued, and by these statements he was particularly advised; there neither is nor could be any suggestion that he was at any time taken by surprise. Inasmuch as the several charges recited in the warrant relate to the same time and place, they might all have been embodied in a single indictment or criminal complaint. A fortiori there was no impropriety in grouping them in a single administrative proceeding. '

In substance, the other assignments are that the proceedings were unfairly conducted, and there is no competent evidence to support the warrant of deportation; the argument being that, without certain ex parte statements and certain judgments of a state court, the record is devoid of substantial evidence; that the statements are inadequately authenticated, and the immigration officers refused to produce for cross-examination the persons by whom they are supposed to have been made; and that the judgments are incompetent and of no probative value.

On March 31, 1926, appellant was main-

taining a restaurant at 19 Smith street, Alvarado, Cal., that section of the town being popularly known as "Little Tia Juana." In addition to serving meals, he sold soft drinks, cigars, etc., and in a room provided with a player piano he encouraged or permitted dancing. There were also, on the same floor, apparently, three or four bedchambers occupied by his employees. On March 31st he had two male cooks, Jose Lopez and Frank Telles, each of whom he paid at the rate of $2 a day, with board for both and room for one; also two waitresses, Maria Para and Ampora Cesena, each receiving compensation at the rate of $2 a day, with board and room. In addition to acting as waitresses, these women served at the soft drink fountain and danced with patrons of the place as there was demand. So much appellant in effect admits. The government contends that with his knowledge these waitresses practiced prostitution on the premises, and that he shared in the proceeds thereof, all of which he denies.

On March 31, 1926, in the presence of federal immigration inspectors, local officers, led by a county detective named Helms, conducted a raid of the district, in the course of which no immoral acts or conditions were observed, but numerous persons, including appellant and his employees, were taken into custody and interrogated under oath. Notes of what was said were made at the time, either by a stenographer or an inspector, which were later transcribed, and upon the basis of the information so obtained the Secretary issued the warrant for appellant's arrest. The warrant was served early in May, and on May 10th appellant was given a hearing, at which he appeared in person and by counsel. In response to questions put to him by the inspector, he corrected certain dates and names in the transcript of his statement made at the time of the raid, whereupon the inspector announced that he was incorporating in the record and making a part of the evidence this statement, together with the purported ex parte statements of Lopez, Telles, and Maria Para, and of a woman named Mercedes Gonzales, all of the same date, and a like statement of Detective Helms, taken on April 1st; also a report of the inspectors, made to their superiors. Upon objection by counsel for appellant, the examining inspector advised that the objection would be recorded, but that "the reasons should be noted in a brief." Thereupon appellant produced three character witnesses, who testified that he bore a good reputation in the community. There

being no further witnesses at that time, the inspector adjourned the hearing, with the statement that appellant would be advised of any further proceedings, and that counsel would be mailed a transcript.

The reporter's transcript, which is a part of the record here, does not in fact show that at this hearing counsel made any demand or suggestion that the persons whose statements were so incorporated in the record be produced for cross-examination, but in the record is a letter he wrote on July 7, 1926, to the Commissioner of Immigration at San Francisco, acknowledging receipt of a copy of the transcript, advising that an examination thereof disclosed the failure of the reporter to note the writer's demand at the hearing for an opportunity to cross-examine the makers of the statements, and closing thus: "In order that the record may be clear on this point, the alien now demands that the following witnesses be produced for the purpose of cross-examination, and until they are produced for cross-examination he objects to the use of their statements: Mercedes Gonzales, Maria Para, Jose Lopez, Frank Telles, George J. Helms." Though the receipt of the letter is not denied, no reply was made to it, and there was no response to its demand.

Apparently no further action was taken until April 1, 1927, when a hearing was had to enable the inspector to incorporate in the record two abatement decrees, entered in the superior court for Alameda county, California, on January 20, 1927. Appellant, with his counsel, was present and objected. No other part of the record in either of these cases was offered in evidence. The decrees are closely similar in form, the only substantial difference being that by one the buildings in the "Little Tia Juana" district are decreed to be closed, for the reason that they had been used in violation of the National Prohibition Act (27 USCA), and by the other because they had been used for the purpose of "lewdness, assignation, and prostitution." In each appellant is named as one of the numerous defendants, and the restaurant building is specified as one of the structures covered thereby. In each it is recited that trial was had in October, 1926, but in neither does it appear when action was commenced, or when defendant was served with process. Nor does it appear from either when any of the buildings described were used for unlawful purposes, reference on that point being made to the complaint, which, as we have seen, was not offered in evidence.

Following the reception of the documents, appellant testified that about 10 days after the raid he sold his restaurant business to the owner of the building and thereafter had no interest, that when papers were served on him he simply turned them over to the owner, and that in fact he did not employ the attorneys who, under the recitals of the decree, put in appearance for him, and that he took no part in the actions.

What, if anything, occurred in the meantime, is not disclosed; but on July 20, 1927, counsel for appellant addressed to the Commissioner a brief in the form of a letter, in which he argued that the statements should not be considered, for the reason, among others, that the makers thereof had not been produced for cross-examination. In response the inspector in charge wrote a letter on behalf of the Commissioner, of date August 4, 1927, incidentally negativing the contention that appellant had at either hearing made request for opportunity to cross-examine, and, referring to counsel's letter of July 7, 1926, stated that Lopez had been deported on June 23d, Telles on June 26th, Maria Para on July 17th, all in 1926, and that Mercedes Gonzales had died on December 26, 1926. He further advised that a hearing would be held on August 11th, at which time Helms would be produced for cross-examination. By the cross-examination at this hearing the Helms original statement was so materially qualified that it was left without probative value upon the critical issue.

[2] It is virtually conceded for the appellee that, but for the abatement decrees and the ex parte statements of the two women, Maria Para and Mercedes Gonzales, the record is without substantial evidence to support the warrant findings. Manifestly, the decree under the National Prohibition Act is irrelevant. Assuming that the other decree is competent, a question we need not decide, there is no showing of the time when any of the buildings referred to were used for the specified immoral purposes, and no finding or declaration that appellant had knowledge that his restaurant was ever being used for such purposes.

[3, 4] As for the ex parte statements, it is expressly alleged in appellant's amended petition "that petitioner, at the time said statements were introduced, demanded the production of the persons alleged to have made the said statements for the purpose of cross-examination, but such demand was refused." Inasmuch as the petition was dismissed on demurrer, this averment must be deemed to be true, and, that being the case, the use of the statements as the basis for the warrant was manifestly unfair. For the refusal no explanation is offered, and no reasonable explanation can be conjectured. It is to be inferred that, when the original hearing was had on May 10, 1926, the four persons were either in the actual custody or subject to the control of the immigration officers, and could easily have been produced. [5] Moreover, were it conceded that no formal demand for an opportunity to cross-examine was expressly made at the hearing, we do not think the concession would purge the proceedings of all unfairness. Admittedly appellant objected to the consideration of these statements, and under some general rule of practice before the inspector the alien is discouraged from particularizing his objections or stating the reasons therefor. Counsel for appellant was so admonished again and again in this case. It is further conceded that, as soon as he received the transcript of the proceedings, on July 7, 1926, counsel formally and clearly demanded opportunity to cross-examine. The two really important witnesses were then available—one of them at least in the actual custody of the Commissioner, for she was deported and effectually put beyond the reach of cross-examination 10 days later. When the demand of July 7th was received, counsel for appellant should have been promptly advised of the conditions and required forthwith to examine Maria Para, under penalty, in case of delay, of losing the opportunity, and the Gonzales woman should have been produced or reasons given for not doing so. Taking it at its full face value, her statement was highly damaging to appellant; but she was his competitor in business, admittedly had been, if she was not at the time of the raid, practicing prostitution, and it is highly improbable that some of the assertions made in her statement were based on first-hand knowledge. The interests of truth clearly demanded cross-examination, and it should have been invited, not evaded.

Reversed, with directions for further proceedings not inconsistent herewith.