### In re SUGANO.
### No. 9682.

District Court, S. D. California, S. D.
Feb. 15, 1930.

J. Edward Keating and Theodore E. Bowen, both of Los Angeles, Cal., for petitioner.

Samuel W. McNabb, U. S. Dist. Atty., and Gwyn S. Redwine, Asst. U. S. Dist. Atty., both of Los Angeles, Cal., for Immigration Department.

McCORMICK, District Judge.

This is a proceeding in habeas corpus directed by an alien against the Immigration Service of the government. It is contended that the detention of the alien under a warrant of deportation is illegal.

The sole question is whether or not the alien was accorded a fair hearing by the immigration authorities within the meaning of applicable law.

There are two essential prerequisites before aliens can be deported. It must satisfactorily appear from the evidence, first, that the person illegally entered into the United States and is found herein in such unlawful status, and secondly, the deportation proceedings before the immigration authorities must have been fairly conducted. Each of the aforesaid requirements is equally important, and, unless both are shown by the record of proceedings before the Immigration authorities, there has not been "due process of law" that is guaranteed to all persons by constitutional government in the United States, and in such event the judicial power of the government should prevent deportation. In speaking of the power of immigration authorities in such proceedings against aliens ineligible for American citizenship, the Supreme Court, in Kwock Jan Fat v. White, 253 U. S. 464, 40 S. Ct. 566, 570, 64 L. Ed. 1010, said, "The acts of Congress give great power to the Secretary of Labor over Chinese immigrants and persons of Chinese descent. It is a power to be administered, not arbitrarily and secretly, but fairly and openly, under the restraints of the tradition and principles of free government applicable where the fundamental rights of men are involved, regardless of their origin or race. It is the province of the courts, in proceedings for review, within the limits amply defined in the cases cited, to prevent abuse of this extraordinary power, and this is possible only when a full record is preserved of the essentials on which the executive officers proceed to judgment." If this pregnant language is applied to the record before us, it seems clear that the petitioning alien has not been accorded that fair and open hearing that he should have received from the immigration authorities of the United States.

The Bureau file in evidence reflects a sincere but an erroneous belief by the immigration officials that deportation is justified when an alien admits or confesses to facts that show that he has unlawfully entered and in that status remains within our country. The law however, guarantees to him a fair hearing

wherein such facts shall be established and this last requirement, in my opinion, is of equal legal importance and should be jealously safeguarded by the courts. It is only by strict observance of lawful authority by governmental officers that human rights can be safeguarded against arbitrary and oppressive authority.

Coming now to the pertinent facts disclosed by the record, it appears that the warrant of deportation was based solely upon the oral admissions of the alien at an investigation of his status conducted by Inspector Bliss at Los Angeles, Cal., on March 11, 1929, at which the only persons present were said inspector, a Japanese interpreter, employed by the immigration service, and the Japanese alien who apparently was unable to convey his thoughts through, or speak, the English language. The examination was conducted through such interpreter, and all statements of the alien were spoken in his native tongue and conveyed to the inspector through the interpreter. This investigation took place three days subsequent to the petitioner's arrest. At the time of his arrest, having attempted to escape, he was shot by police officers in recapturing him. He offered no actual physical resistance to arrest and had no weapon, but merely attempted to run away from the custody of the police and an immigration officer, and received the wound in such situation. He was treated at a hospital immediately after the shooting, and the next day was placed in jail where he remained until taken to the office of the Immigration Department for investigation.

■ On March 22, 1929, petitioner was given a hearing to show cause why he should not be deported under the warrant of the Secretary of Labor made pursuant to the aforesaid investigation of March 11th. He was represented by counsel at the hearing on March 22d. It was there shown that the alien at the time of the hearing on March 11th was suffering severe pain from his wounded arm, that he was frightened and not in normal mental or physical condition. The Japanese interpreter present at the March 11th hearing testified that the alien "shed tears, was crying, and had awful pains. I could see that very well." At this hearing on March 22d, counsel for the alien demanded that Inspector Bliss, who had conducted the investigation upon which the warrant of deportation was based, be produced for cross-examination as to the physical and mental condition of the alien at the time of his statements and ad-

missions on March 11th. This demand was refused by the immigration officers, Inspector Bliss was not produced, and the alien was denied the right to examine or cross-examine him as to the fairness or character of the investigation of March 11th, or as to his condition when he made the admissions upon which he has been ordered deported. The immigration officers asserted the position that inasmuch as the alien had admitted his unlawful entry into the United States that any examination of Inspector Bliss as to the nature and character of the investigation of March 11th would be immaterial and would not illuminate the question as to the status of the alien. I am of the opinion that such action was arbitrary, unfair, and violative of the fundamental rights of the alien under the Constitution and laws of the United States. I think that the denial of the right of examination of Inspector Bliss was unwarranted and clearly tended to thwart and suppress a fair and open hearing within the meaning of the law. The language of Circuit Judge Sanborn in Ungar v. Seaman (C. C. A.) 4 F.(2d) 80, 85, is strikingly analogous to the situation presented by the record in this matter. He said, "It is not denied that the admissions of aliens when they are not under arrest, freely made to officers or other persons, established by the oral testimony of those officers or persons subject to cross-examination by the accused, may be received in evidence against them at their hearings before the immigration officers, and that such hearings are not bound in all things by the strict rules of evidence which prevail in the courts. But the secret questioning of these aliens by the arresting officers, immediately after their arrest, without counsel or opportunity to procure it, without plain notice of the specific violation of an act of Congress they were required to meet, and without opportunity or time to prepare to meet it, the admission in evidence of the reports of this secret questioning against them, without the presence or testimony of the reporting officers or any opportunity for the accused to cross-examine them, * * * deprived these aliens of the essential elements of due process of law, and rendered their hearings so unfair and unjust that they cannot be sustained."

■ It is true that the same observance of the rules of evidence need not be pursued by the immigration officers in deportation proceedings that attend judicial proceedings, but there are fundamental and essential procedural requirements that cannot be brushed

aside by any investigating authorities of the government. Svarney v. U. S. (8 C. C. A.) 7 F.(2d) 515. It does violence to any intelligent conception of a person's constitutional right not to be required to be a witness against himself, to deny and prevent a full enquiry into the circumstances and situation when it is claimed that one has voluntarily made incriminating or damaging admissions against himself. Such, I believe, was the effect of the officers' refusal to call or permit the calling of Inspector Bliss at the hearing on March 22d.

The real question at this hearing was not whether the petitioner had admitted facts that would subject him to deportation, but whether he had done so voluntarily. The petitioner claimed that he was in such painful condition that he did not know anything about the examination of March 11th. The Japanese interpreter corroborated him as to his abnormal mental and physical condition at the time, and the only other person present, and indeed the one by whom presumably his real condition could have been unmistakably and fairly disclosed, was not called and his production, although demanded by the petitioner, was refused by the immigration officers. The only reason assigned by them for not calling Inspector Bliss, or continuing the hearing until the petitioner could call him, was that the statement of the alien on March 11th "spoke for itself."

I do not believe under the showing made as to the condition of Sugano on March 11th, that it was fair to accept the cold written translation of what he said without at least hearing or giving the alien an opportunity to produce the one who wrote up his translated utterances.

I conclude, although it is made to appear by the record that Sugano may be subject to deportation because illegally within the United States, that it would be an encouragement of arbitrary, unjust, and autocratic governmental power to fail to declare that the hearings of deportation proceedings against the petitioner were unfair and unjust.

Accordingly, it is ordered that the petitioner Buichi Sugano be discharged from further restraint, detention, or custody under the warrant of deportation of the Secretary of Labor, dated May 4, 1929, without prejudice; however, to any further lawful proceedings that the immigration authorities of the United States may see fit to institute against said alien in order to determine his right to be, and remain, within the United States.