### Ex parte SEISUKE FUKUMOTO.
### No. 6502.

Circuit Court of Appeals, Ninth Circuit.

Nov. 9, 1931.

J. Edward Keating and Theodore E. Bowen, both of Los Angeles, Cal., for appellant.

Samuel W. McNabb, U. S. Atty., and Milo E. Rowell, Asst. U. S. Atty., both of Los Angeles, Cal. (Harry B. Blee, U. S. Immigration Service, of Los Angeles, Cal., on the brief), for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and ST. SURE, District Judge.

ST. SURE, District Judge.

Appellant is a person of the Japanese race, born in Japan. He was ordered deported by the Secretary of Labor on the following grounds: (a) That he is in the United States in violation of the Immigration Act of 1924 in that he was not, at the time of entry, in possession of an unexpired immigration visa. (b) That he is in the United States in violation of the Immigration Act of May 26, 1924, in that he is an alien ineligible to citizenship, not exempted by paragraph c, section 13 thereof (8 USCA § 213(c), from the operation of said act. (c) That he entered in violation of rule 7 of the Immigration Rules.

Appellant filed a petition in the District Court for a writ of habeas corpus, alleging in substance that he had been in the United States continuously for a period in excess of

five years immediately preceding the institution of deportation proceedings, that there was no evidence to sustain the warrant of deportation, and that he was not given a fair hearing. The District Court made its order discharging the writ and remanding petitioner to the immigration authorities for deportation, from which order this appeal is taken.

Appellant specified several errors in his assignment, all of which may be disposed of in deciding the question as to a fair hearing.

Appellant does not claim that he was ever admitted to the United States for legal residence. Both parties are satisfied with the holding of the Board of Review in that regard, which is as follows: "It may be concluded * * * as reasonably established that the alien was in the United States prior to July 1, 1924, the effective date of the Immigration Act of that year, under which the first two charges against the alien are placed, and although the alien has not borne the burden of proving the lawfulness of his entry or the time, place and manner of such entry, as is provided in section 23 of the Immigration Act of 1924, that would appear unimportant if he has shown that his last entry was prior to July 1, 1924, for whether he entered lawfully or not and whether he is presently within the country lawfully or unlawfully, if, having entered prior to that date he has continuously resided here since, he would not be deportable."

Appellant testified that he has been in the United States continuously since May, 1924, and produced several letters addressed to him in the United States, the first of which was postmarked June 7, 1924, and the last October 4, 1927. Robert M. Hartwell, an American citizen of the white race, testified that he had employed appellant as a gardener in June, 1924, and that appellant worked for him the succeeding three years. This witness had not seen appellant for two and one-half years, and appellee points out that, if appellant had resided continuously in this country from October 4, 1927, until the time of his apprehension, he could have produced some person to so testify. Appellee argues that such failure on appellant's part leads to the conclusion that he visited Japan in the interim.

The record shows that at the preliminary examination appellant stated to Inspector Garrity that he entered the United States at Calexico, Cal., on or about July 3, 1925; that he was not inspected at that time; that he was not in possession of an unexpired immigration visa, nor did he have a passport from his government entitling him to apply for admission to the United States; that he had been in United States previously in the sense that he had passed through in transit from San Francisco to Mexicali, Mexico, about six months before he came in from Mexicali; that he had come to the United States on that occasion on the steamship Siberia Maru; that he is by occupation a farm laborer; that he was born in Japan on December 8, 1897. He is described in these proceedings as being five feet three and five-eighths inches in height, and as having pit marks in front of his right ear and on the right side of his chin, and a scar at the junction of his first finger and hand on the left hand.

At the formal hearing following his arrest, appellant was told, in the presence of his counsel, "There is presented herewith for your inspection all the evidence on which the warrant of arrest was based which consists of sworn statement made by you to Inspector-in-Charge John R. Garrity at Los Angeles, Calif., October 22, 1929." Counsel stipulated that he had familiarized himself with the evidence. Appellant denied he made the statements attributed to him.

 It is settled doctrine that in deportation proceedings the strict rules of judicial procedure and of proofs do not prevail. Ghiggeri v. Nagle (C. C. A.) 19 F.(2d) 875; Bilokumsky v. Tod, 263 U. S. 149, 157, 44 S. Ct. 54, 68 L. Ed. 221; Ng Mon Tong v. Weedin (C. C. A.) 43 F.(2d) 718. Statements such as the one in question here, made to an immigration inspector prior to arrest, are admissible in evidence. Bilokumsky v. Tod, supra; Ematsu Kishimoto v. Carr (C. C. A.) 32 F.(2d) 991; Ghiggeri v. Nagle, supra.

 There was also offered in evidence Exhibit B in the immigration file. This document is known as Form 400, a "Descriptive List of Chinese persons, or Japanese or Korean laborer in transit through the United States." Aliens of the classes named are inadmissible for permanent residence, but are permitted under the regulations to pass through the country in transit. Appellant says his true name is Seisuke Fukumoto. Exhibit B shows that a Japanese known as Kesasuke Fukumoto arrived at San Francisco "January 5, 1929, per 'Siberia Maru,' destination Mexicali. Country of birth, Japan, Kajoshima. Last place of residence, Japan, Kajoshima. Sex M. Age 31. Height 5'3". Physical marks, pit marks in front of right ear." The document bears a signature

in Japanese characters and a photograph which the appellee contends is a likeness of appellant.

A photograph was taken of appellant since his arrest, which photograph is in the file and marked "Exhibit G." Counsel for appellant stipulates that Exhibit G is a likeness of appellant, but denies that the alien who is represented by the descriptive list above mentioned is identical with appellant.

Upon this important question of identification the Board of Review says in its decision: "On the date of the preliminary examination of the subject of these proceedings, October 22, 1929, the alien is represented as informing the examining inspector that he was born in Japan on December 8, 1897. He would on that date, therefore, by computation, have been thirty-one years, ten months, and fourteen days old. On January 5, 1929, when Kesasuke Fukumoto arrived at San Francisco, his age was given as thirty-one years. The ages, therefore, accurately compare. The subject of these proceedings was described in the preliminary examination of October 22, 1929, as being 5 feet 3 and five-eighths inches in height. Kesasuke Fukumoto, on arrival at San Francisco was described as being 5 feet 3 inches in height, a very slight difference indeed. Moreover, the subject of these proceedings was described in the preliminary examination as having pit marks in front of his right ear and on the right side of his chin and a scar at the junction of his first finger and hand on the left hand. Kesasuke Fukumoto, on arrival at San Francisco on January 5, 1929, was described as bearing a pit mark in front of his right ear. It is not shown on the document relating to the arrival of Kesasuke Fukumoto at San Francisco on January 5, 1929, that he had a pit mark on the right side of his chin or a scar on the left hand."

The immigration officers, with appellant and the photographs before them, expressed the opinion that Kesasuke Fukumoto and Seisuke Fukumoto are one and the same alien. Inspector Garrity, after examining the photographs and the alien, expressed his opinion that there was no doubt that the photographs were of the same man. The Board of Review, in its decision, says, "The photographs are present in the record and we have carefully examined them. Waving aside the non-permanent features such as the garb, extent of growth and the condition of the hair and the position of the subjects when the photographs were taken, with some consideration for the difference in the apparent tone of the photographs, and especially consideration of the permanent features, it is concluded that the photographs relate to one and the same man."

It is objected that the hearing was unfair because of the admission in evidence of Exhibit B, and further because Inspector Garrity was permitted to testify that in his opinion the photograph attached to the exhibit was the likeness of appellant. It is claimed that the exhibit was an "ex parte document" and that appellant was deprived of the opportunity to "cross-examine the witnesses or rebut the evidence." Exhibit B was a part of the immigration records, and as such was admissible in evidence.

■ Appellant was arrested on October 24, 1929. He was represented by counsel at the formal hearing to show cause why he should not be deported, held on November 7, 1929. At that time he was fully informed as to his rights, and the record shows that counsel had theretofore been given a copy of the evidence upon which the warrant of arrest was based, had read the same, and was ready to, and did, proceed. Appellant was shown Exhibit B and questioned about it. In an effort to determine the question of identity, he was asked to sign the name of Kesasuke Fukumoto (the name appearing on the exhibit) in Japanese characters, but upon advice of counsel he refused to do so. A continuance was had at the request of counsel for appellant to enable him to produce a witness. The hearing was resumed on December 3, 1929, when further evidence was introduced, and a further continuance had until December 5, 1929, when the hearing closed. On December 5th counsel cross-examined Inspector Garrity upon his opinion as to the likeness of appellant to the photograph on Exhibit B. At the close of the hearing appellant was asked, "Have you any further statement to make or evidence to offer to show cause why you should not be deported in conformity with law?" to which his counsel replied, "No." Counsel did not ask that any of the immigration officials whose names appeared on Exhibit B be produced for cross-examination, nor did he at any time during the hearing even suggest that he had any evidence in rebuttal, nor ask for time to produce any.

It does not appear that there was anything unusual in permitting Inspector Garrity to give his opinion as to the likeness of appellant to the photograph attached to Exhibit B. We find in Young Fat v. Nagle (C. C. A.) 3 F.(2d) 439, that the government inspectors gave their opinion as to the age of a Chinese boy; and in Ng Mon Tong v. Weedin, supra,

we note that the inspector and also the clerk of the Board were permitted to testify concerning the age of a Chinese boy. In both of these cases it was held that, in a case where the evidence is conflicting and the members of the Board exercise their judgment, it will not be disturbed.

In this matter, as we have heretofore mentioned, the members of the Board, after a critical examination and comparison of the two photographs, "concluded that the photographs relate to one and the same man."

We are of the opinion that appellant had a fair hearing, and the judgment is therefore affirmed.