## SCHENCK ex rel. PATE v. WARD, Commissioner of Immigration.

### No. 5160.

District Court, D. Massachusetts.

April 4, 1934.

John W. Schenck, of Boston, Mass., for petitioner.

Francis J. W. Ford, U. S. Atty., and Hugo Bagnulo, Asst. U. S. Atty., both of Boston, Mass., for respondent.

BREWSTER, District Judge.

This is a petition for writ of habeas corpus to secure the release from the custody of the Commissioner of Immigration of one Carmine Pate, held on a deportation warrant. The warrant was based on the statute (Act Feb. 5, 1917, c. 29, § 19, 8 U. S. C. § 155 [8 USCA § 155]), which authorizes the deportation of "any alien who manages or is employed by, in, or in connection with any house of prostitution or music or dance hall or other place of amusement or resort habitually frequented by prostitutes, or where prostitutes gather, or who in any way assists any prostitute or protects or promises to protect from arrest any prostitute. * * * "

Before the warrant of arrest issued, investigations had disclosed that the alien had

on June 11, 1932, been found guilty in a state court of competent jurisdiction of maintaining a house of ill fame and had been sentenced to 18 months in Bristol county house of correction. Affidavits of police officers instrumental in obtaining the conviction and of one other affiant were then obtained. As a result of this investigation, a warrant of arrest was issued October 19, 1932, commanding the Commissioner of Immigration at Boston to take the alien into custody and grant him a hearing to enable him to show cause why he should not be deported as an alien found in the United States who had been "found managing a house of prostitution, or music or dance hall or other place of amusement, or resort habitually frequented by prostitutes, or where prostitutes gather."

The alien at that time was in the house of correction serving his sentence. From December 21, 1932, to April 12, 1933, hearing was postponed at least four different times at the request of the alien in order that he might communicate with his brother, who would arrange for an attorney. Finally, at the request of his brother, a hearing was set down for April 12, at which time the brother was present, and the alien stated he did not care to employ an attorney, and expressed his willingness to have the hearing proceed. This hearing was fairly conducted. On May 15, 1933 on his own motion, the inspector in charge reopened the hearing for the purpose of receiving affidavits obtained before the warrant of arrest issued and which have been noted above.

According to the record, the alien was advised as follows: "Your case is to be reopened to supply further evidence on an investigation in your case conducted by Inspector Clark of the Providence office." He was then asked if he was willing to hear this further evidence without his brother being present, to which he replied, "Yes, I am willing to go on at this time without my brother being present." The affidavits were fully read to him, and he understood their purport and was given abundant opportunity to refute or explain the statements in the affidavit. At the conclusion of the hearing, the inspector recommended that the alien be deported, which recommendation appears to have been based solely upon the conviction and sentence in the state court. The board of review took the matter under consideration upon the record, and joined in the recommendation of the inspector. It is quite apparent, however, from the report of the board of review that they attached importance to the contents of the affidavits already referred to.

Following the recommendation, a deportation warrant issued July 17, 1933, on the ground that the alien was found managing a house of prostitution. The execution of the warrant was to be deferred until the expiration of the present sentence. Upon his release from the house of correction, he was taken into custody on the warrant. In the meantime, at the request of the alien and others acting on his behalf, further testimony was taken at the house of correction.

Whether this testimony was received in the presence of the alien the record does not disclose, although there is a fair inference that it was. A further report was made as to the alien's family and their situation, and further consideration was given by the board of review, which recommended that proceedings be held in abeyance until an application for pardon had been acted upon by the Governor. This application was refused. There is nothing in the record to indicate that the alien requested an opportunity to present further evidence.

The hearing seems to have been conducted with due regard to the rights of the alien, and must be deemed to be fair, unless it be held that the introduction of the affidavits at the hearing on May 15, 1933, and incorporating these ex parte statements into the record, denied to the alien his lawful rights, and therefore rendered the hearing unfair.

The courts in other jurisdictions have, with almost complete uniformity, held that the introduction of such ex parte statements with no opportunity to cross-examine is sufficient ground for declaring the hearing unfair. Ungar v. Seaman (C. C. A.) 4 F.(2d) 80; Svarney v. United States (C. C. A.) 7 F.(2d) 515; Maltez v. Nagle (C. C. A.) 27 F.(2d) 835; Gonzales v. Zurbrick (C. C. A.) 45 F.(2d) 934, at page 937.

In Caranica v. Nagle (C. C. A.) 23 F.(2d) 545, the alien was denied an opportunity to cross-examine witnesses, but the board of review did not consider the statements of the witnesses. The hearing was held to be proper. In Imazo Itow v. Nagle (C. C. A.) 24 F.(2d) 526, affidavits were received without objection by the alien, who was represented by counsel who made no request for the privilege of cross-examination. Two of the affiants were present, and the alien was given an opportunity to examine them, but the offer was declined. The only remaining affidavit was that of one of the prostitutes, which was merely cumulative

and could hardly be said to have been of substantial weight. This hearing was upheld.

It would appear, therefore, that the great weight of authority is to the effect that a hearing and record which incorporates ex parte affidavits which are considered by the board of review and apparently exert an influence upon the decision of the immigration authorities is not such a fair hearing as the alien is entitled to demand in deportation proceedings; that this would be the result reached in this court is indicated by the decision in Chin Quong Mew ex rel. Chin Bark Keung v. Tillinghast (C. C. A.) 30 F.(2d) 684. This was an exclusion case where the board of special inquiry received and considered evidence without giving any opportunity to the alien to refute or explain it. The court said that such conduct was highly prejudicial and rendered the hearing unfair.

Inasmuch as the alien was not represented by counsel and presumably ignorant of his legal rights in the premises, the fact that he said to the inspector that he could go ahead with the hearing on May 15 is not sufficient to take the case out of the rule considered above. Gonzales v. Zurbrick, supra.

In conclusion, I find that the alien has not been accorded a fair hearing. Therefore the writ may issue.