**David HYUN, Appellant,**

v.

**Herman R. LANDON, District Director, Immigration and Naturalization Service, Appellee.**

**No. 14058.**

United States Court of Appeals, Ninth Circuit.

Jan. 31, 1955.

Rehearing Denied April 7, 1955.

Margolis, McTernan & Branton, Herbert W. Simmons, Jr., John W. Porter, William B. Murrish, A. L. Wirin, Attorney, American Civil Liberties Union, Los Angeles, Cal., for appellant.

Laughlin E. Waters, U. S. Attorney, Clyde C. Downing, Arline Martin, Robert K. Grean, Manley J. Bowler, Max F. Deutz, Asst. U. S. Attorneys, Los Angeles, Cal., for appellee.

Before STEPHENS and CHAMBERS, Circuit Judges, and CLARK, District Judge.

STEPHENS, Circuit Judge.

David Hyun appeals from a judgment of the United States District Court, denying and dismissing his petition for the writ of habeas corpus in which appellant sought release from the custody of appellee who was holding him under a final order of deportation. Appellee Landon is the District Director of the Immigration and Naturalization Service.

Appellant is a native of Korea and asserts citizenship of China. He was admitted to the United States at Honolulu, Territory of Hawaii, on May 26, 1924, at which time he was seven years old. He was admitted to the continental United States at Los Angeles, California, on September 1, 1947. A warrant for his arrest in deportation proceedings was issued and served on him on October 21, 1950, in which appellant was charged as an alien who, after entry, had been a member of the Communist Party of the United States.[1] Pursuant to the warrant, Hyun was taken into custody pending determination of his deportability.

Hearings were started on November 22, 1950, at which time the hearing officer granted a motion by the examining officer to take the depositions of four witnesses in Honolulu. Timely notice was given and appellant's counsel was informed that appellant could be present, could submit written interrogatories and could present witnesses, or could be represented by counsel. Accordingly, depositions were taken in Honolulu on December 18, 1950, but appellant was not present or represented. Nor did he submit direct interrogatories.

---

1. The warrant charged Hyun with deportability for violation of the "Act of October 16, 1918, as amended, in that he has been after entry a member of the following class set forth in § 1(2) (c) of said Act: an alien who was a member of the Communist Party of the United States. 8 U.S.C.A. § 137(2) (c) 1951 pocket part [now 8 U.S.C.A. § 1182(a) (28) (C)]".

On March 28 and 29, 1951, the deportation hearing was resumed, at which time appellant's counsel made specific objections to certain questions and answers contained in the Honolulu depositions. At this time appellant disclaimed any desire to present cross interrogatories to the Honolulu witnesses or to present witnesses of his own. Appellant testified but refused to answer any question concerning Communist Party membership on the grounds that it might tend to incriminate him and that it violated his rights under the first amendment to the Constitution of the United States. On April 19, 1951, appellant once again stated that he would not submit cross interrogatories to the Honolulu witnesses. The hearing officer, relying only on the depositions of Uesugi and Izuka, found the appellant deportable. The finding of the hearing officer was adopted by the Assistant Commissioner and appellant was ordered deported. Subsequently, the Board of Immigration Appeals dismissed appellant's appeal and the action from which the instant appeal is taken was filed on July 24, 1953.

### The Taking of the Depositions in Hawaii

It is contended by appellant that the action of the Immigration Service in taking the depositions of Uesugi and Izuka in Honolulu, while he was in custody in California, deprived him of the essential ingredients of due process of law. The argument is that not only was Hyun in the custody of appellee at the time the depositions were taken but that he was financially unable to transport his counsel to Honolulu or procure Honolulu counsel to represent him at the depositions. In view of the comparative financial resources of Hyun and the government of the United States, and in further consideration of the plethora of government transportation between Hawaii and the west coast, it is appellant's conten-

tion that the government should have transported the witnesses to the west coast for the depositions, or in the alternative provided transportation to Hawaii for Hyun and his attorney. Failure to do either, it is alleged, deprived appellant of essential ingredients of due process of law.[2]

An alien in deportation proceedings must be afforded due process of law, including a fair hearing, Wong Yang Sung v. McGrath, 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616, and indispensable to a fair hearing are reasonable notice, the right to examine witnesses and to testify and to present witnesses and to be represented by counsel, all of which appellant had. This court has repeatedly held that financial inability of an alien to insure attendance of himself or his attorney, or both, at the place where depositions are being taken is not a denial of due process. As was stated in Bhagat Singh v. McGrath, 9 Cir., 1939, 104 F.2d 122, 123:

> "Deportation proceedings are civil in nature and the alien need not be confronted by the witnesses; evidence may be obtained by deposition. * * * We have heretofore decided that the fact that an alien is financially unable to travel to a place where he could cross-examine the witnesses, or send an attorney there, is not a denial of the right of cross-examination."

See also Channan Singh v. Haff, 9 Cir., 1939, 103 F.2d 303; and Kishan Singh v. District Director of Immigration, 9 Cir., 1936, 83 F.2d 95. See, too, Berkman v. Tillinghast, 1 Cir., 1932, 58 F.2d 621, 622; Hale v. Henkel, 1906, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652.

Cases cited by appellant to sustain the view that the government erred in not insuring the presence of Hyun at the taking of the depositions, are not applicable to the instant case:

2. Circumstances relating to adequate counsel for persons charged with Communist adherence indicate that it would not be unreasonable for the trier of fact to disbelieve that appellant could not be represented at the Honolulu hearings.

Maltez v. Nagle, 9 Cir., 1928, 27 F.2d 835—The hearing officer refused to produce for examination persons whose statements were ex parte;

Caranica v. Nagle, 9 Cir., 1928, 23 F.2d 545—It was held that the hearing was not unfair where cross-examination was not allowed as to a witness whose testimony had been received but whose testimony was not considered as to the decision;

In re Sugano, D.C.Cal.1930, 40 F. 2d 961—The hearing was held unfair where proper cross-examination had been denied.

■ Failure to assert one's rights merely because to do so would necessitate some inconvenience can only be construed as a waiver of the right. Kishan Singh v. District Director of Immigration, 9 Cir., 1936, 83 F.2d 95.

Rulings of the Hearing Officer

■ When the depositions of the Honolulu witnesses were offered in evidence at the Los Angeles hearings of March 28 and 29, 1951, appellant objected to certain of the questions or answers which he felt were improper under established rules of evidence. The hearing officer seriatim overruled appellant's objections. Appellant argues that this action of the hearing officer admitted a mass of incompetent evidence which fatally corrupted both the hearing and the record. It was strongly stated by appellant's counsel both in the briefs and at the hearing that the conduct of the presiding officer bespoke "a marked lack of that degree of judicial objectivity which a fair hearing connotes." It would seem clear that the action of the hearing officer in rejecting all of appellant's motions and objections was not in and of itself a de-nial of due process of law, without a showing that the objections were well taken, and that the action actually resulted in a denial of due process.

■ It is well settled that the power of Congress to regulate the deportation of aliens is plenary and only in the case of extreme abuse will the courts intervene. As stated in Carlson v. Landon, 1952, 342 U.S. 524, 536, 72 S.Ct. 525, 532, 96 L.Ed. 547, " * * * 'it is thoroughly established that Congress has power to order the deportation of aliens whose presence in the country is deemed hurtful' ". See also: Harisiades v. Shaughnessy, 1952, 342 U.S. 580, 72 S.Ct. 512, 96 L.Ed. 586; Shaughnessy v. United States ex rel. Mezei, 1953, 345 U. S. 206, 73 S.Ct. 625, 97 L.Ed. 956; Bugajewitz v. Adams, 1913, 228 U.S. 585, 591, 33 S.Ct. 607, 57 L.Ed. 978; Ng Fung Ho v. White, 1922, 259 U.S. 276, 280, 42 S. Ct. 492, 66 L.Ed. 938; Ocon v. Landon, 9 Cir., 218 F.2d 320; Galvan v. Press, 9 Cir., 1953, 201 F.2d 302; Carlson v. Landon, 9 Cir., 1950, 186 F.2d 183. Consequently, when the Supreme Court held the provisions of the Administrative Procedures Act [3] applicable to deportation hearings, Wong Yang Sung v. McGrath, 1950, 339 U.S. 333, 70 S.Ct. 445, 94 L.Ed. 616, Congress subsequently specifically exempted such proceedings from the requirements of the Act.[4] The procedure to be followed in deportation proceedings is presently embodied in the Immigration and Nationality Act.[5] Marcello v. Ahrens, 5 Cir., 1954, 212 F.2d 830, 836; Galvan v. Press, 9 Cir., 1953, 201 F.2d 302, 304.

■ In this connection it is settled that deportation proceedings are civil in nature, not criminal. Carlson v. Landon, 1952, 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed.

**3.** Title 5 U.S.C.A. § 1001 et seq., June 11, 1946, c. 324, § 2, 60 Stat. 237; as amended Aug. 8, 1946, c. 870, Title III, § 302, 60 Stat. 918; Aug. 10, 1946, c. 951, Title VI, § 601, 60 Stat. 993; March 31, 1947, c. 30, § 6(a), 61 Stat. 37; June 30, 1947, c. 163, Title II, § 210, 61 Stat. 201; March 30, 1948, c. 161, Title III, § 301, 62 Stat. 99.

**4.** Supplemental Appropriation Bill Rider, Sept. 27, 1950, 64 Stat. 1048.

**5.** Title 8 U.S.C.A. § 1252(b), June 27, 1952, c. 477, Title II, Ch. 5, § 242, 66 Stat. 208.

547; Bhagat Singh v. McGrath, 9 Cir., 1939, 104 F.2d 122.

■ Traditionally, the formal exclusionary rules of evidence present in judicial proceedings have been relaxed in administrative practice. As stated by this court in Schoeps v. Carmichael, 9 Cir., 1949, 177 F.2d 391, 395: "Common law rules of evidence are not based in constitutional interdictions and administrative tribunals are not bound by such rules except those perpetuated in governing regulations." See also the following cases by this court: Willapoint Oysters, Inc., v. Ewing, 9 Cir., 1949, 174 F. 2d 676, 690; Kunimori Ohara v. Berkshire, 9 Cir., 1935, 76 F.2d 204; Singh v. District Director of Immigration, 9 Cir., 1938, 96 F.2d 969, 971; Ex parte Shigenari Mayemura, 9 Cir., 1931, 53 F. 2d 621.

This rule is followed by the Supreme Court, N. L. R. B. v. Donnelly Garment Co., 1947, 330 U.S. 219, 67 S.Ct. 756, 91 L.Ed. 854, and the other circuits. Rhodes Pharmacal Co. v. F. T. C., 7 Cir., 1953, 208 F.2d 382, 387; Tassari v. Schmucker, 4 Cir., 1931, 53 F.2d 570, 572; Murdoch v. Clark, 1 Cir., 1931, 53 F.2d 155, 156; Hays v. Hatges, 8 Cir., 1938, 94 F. 2d 67, 68. Under this rule both opinion and hearsay evidence have been deemed admissible. In Ex parte Seisuke Fukumoto, 9 Cir., 1931, 53 F.2d 618, certain immigration inspectors were permitted to state their opinions from viewing photographs that persons bearing different names were actually one and the same alien.

■ In United States ex rel. Ross v. Wallis, 2 Cir., 1922, 279 F. 401, the court said at page 403: "Since the only legal limitation upon departmental procedure is that a hearing, fair, though summary, must be accorded, *hearsay evidence is admissible.*" [Emphasis added.] See also Morrell v. Baker, 2 Cir., 1920, 270 F. 577; United States ex rel. Diamond v. Uhl, 2 Cir., 1920, 266 F. 34; and Christianson v. Zerbst, 10 Cir., 1937, 89 F.2d 40. Furthermore, contrary to appel-

lant's contention the mere fact that incompetent evidence was received and considered does not establish want of due process in the hearing such as would require a reversal on that ground. Tisi v. Tod, 1924, 264 U.S. 131, 44 S.Ct. 260, 68 L.Ed. 590; United States ex rel. Vajtauer v. Commissioner of Immigration, 1927, 273 U.S. 103, 47 S.Ct. 302, 71 L. Ed. 560; and Ex parte Jurgans, D.C. 1927, 17 F.2d 507. See, also, United States ex rel. Impastato v. O'Rourke, 8 Cir., 1954, 211 F.2d 609, and the collection of authority contained therein at page 611.

The Substantiality of the Evidence

■ It is next urged by appellant that the deportation order cannot stand as it is not based upon reasonable substantial and probative evidence as required by the Act.[6] Rubinstein v. Brownell, 1953, 92 U.S.App.D.C. 328, 206 F.2d 449, affirmed by a divided court, 346 U.S. 929, 74 S.Ct. 319, 98 L.Ed. 421. The argument is that of the four depositions taken in Honolulu, two were disregarded by the immigration authorities in arriving at their decision. Hence the order to deport Hyun is based solely upon the testimony of Uesugi and Izuka, there being no other evidence to sustain the substantive charge of membership in the Communist Party of the United States. Appellant then attacks the testimony of these witnesses on the basis of non-responsive and voluntary answers and general understandability. The testimony of Uesugi was characterized at one point as being given "with vagueness approaching unintelligibility", while Izuka was labeled a wholly incompetent witness and his testimony such as to corrupt and debase the entire proceeding. As a conclusion, appellant states that this hearing was in effect an ex parte hearing in his absence.

We have read and studied the depositions as a whole, and we are unable to agree with appellant's contentions. Both Uesugi and Izuka testified that they had joined the Communist Party in Honolulu

6. 8 U.S.C.A. § 1252(b) (4), June 27, 1952, c. 477, Title II, Ch. 5, § 242, 66 Stat. 208.

and had come in contact with appellant at Communist meetings, as members. This has not been denied by appellant. Both this court and the Supreme Court of the United States have held that an inference may be drawn from the refusal of an alien to testify on his own behalf in deportation proceedings. Bilokumsky v. Tod, 1923, 263 U.S. 149, 153, 44 S.Ct. 54, 68 L.Ed. 221. And see United States ex rel. Vajtauer v. Commissioner of Immigration, 1927, 273 U.S. 103, 47 S.Ct. 302, 71 L.Ed. 560, and Kunimori Ohara v. Berkshire, 9 Cir., 1935, 76 F.2d 204; Chan Nom Gee v. United States, 9 Cir., 1932, 57 F.2d 646, 650.

### The Constitutional Question

■ At the time the briefs in the instant case were written, the Supreme Court had recently decided in Galvan v. Press, 1954, 347 U.S. 522, 74 S.Ct. 737, 98 L.Ed. 911, that the statute attacked here [7] was constitutional and that it did not deprive aliens of due process of law by dispensing with proof of the character of the Communist Party in deportation proceedings. Also considered and decided negatively was the question of whether support or demonstrated knowledge of the Communist Party's advocacy of violence was intended to be a prerequisite to deportation. Subsequently the court granted certiorari in Garcia v. Landon, 347 U.S. 1011, 74 S.Ct. 873, 98 L.Ed. 1135, a case in which the constitutionality of deportation under the instant statute was upheld upon authority of the Galvan case. As a result, a petition was filed seeking a rehearing in Galvan v. Press. Both the Garcia appeal and the Galvan petition for rehearing were pending at the time the briefs in the instant case were filed. Appellant treated the decision in Galvan as not yet final and argued at length the constitutional questions which were treated therein. Thereafter and during the October, 1954, term of court, Garcia was dismissed as moot and the petition for rehearing in Galvan

was denied. Galvan thus becomes final, and the holding that the Internal Security Act of 1950 is constitutional is controlling in the instant case. The Supreme Court in commenting on the action of Congress in making present or prior membership of an alien in the Communist Party in and of itself ground for deportation, stated, 347 U.S. 522, at page 529, 74 S.Ct. 737, at page 742, "Certainly, we cannot say that this classification by Congress is so baseless as to be violative of due process and therefore beyond the power of Congress."

The judgment of the district court is affirmed.

---

**7.** Internal Security Act of 1950, 64 Stat. 987, 1006, 1008, 8 U.S.C.A. § 137(2) (c), now the Immigration and Naturalization Act, June 27, 1952, 8 U.S.C.A. § 1101 et seq., c. 477, Title I, § 101 et seq., 66 Stat. 166 et seq.