Vicente **NAVARRETTE–NAVARRETTE,**
Appellant,

v.

**H. R. LANDON, District Director of Immigration and Naturalization, Department of Justice, Appellee.**

No. 14343.

United States Court of Appeals
Ninth Circuit.

May 4, 1955.

David C. Marcus, Los Angeles, for appellant.

Laughlin E. Waters, U. S. Attorney, James R. Dooley, Max F. Deutz, Robert K. Grean, Asst. U. S. Attys., Los Angeles, for appellee.

Before STEPHENS and FEE, Circuit Judges, and WIIG, District Judge.

WIIG, District Judge.

Vicente Navarrette-Navarrette appeals from a judgment of the United States District Court discharging his writ of habeas corpus and ordering him remanded to custody under a final order of deportation. Appellee, Landon, is the District Director of the Immigration and Naturalization Service.

Appellant is a native and citizen of Mexico who entered this country for permanent residence in 1920 and has since resided in Southern California. The events leading to the deportation order are noted below.

In 1949, appellant was offered fifty dollars by Juan Ramirez to assist the latter's alien brother to enter the United States. Following this, appellant went from his home in California to Tijuana, Mexico, on July 16, 1949, where he contacted the alien brother, along with three other aliens. In the ensuing conversation, appellant informed the aliens that he could not assist them across the international line, but that if they got across he would drive them to their destination in Corona, California. The four aliens illegally entered the United States without inspection and met appellant in San Ysidro, California, just north of the border. While in appellant's car, the group was apprehended by border patrol officers.

Criminal proceedings were instituted against appellant, and on October 29, 1949, he was, on his plea of guilty, convicted of illegally bringing aliens into the United States, in violation of 8 U.S.C. § 144.[1] He was sentenced to serve a term of imprisonment of three months and to pay a fine of $100.

On December 29, 1949, a warrant of arrest in deportation issued against appellant and hearings were held on January 24 and February 12, 1952, at which he was represented by counsel. On April 23, 1952, the hearing officer recommended that appellant be deported from the United States pursuant to 8 U.S.C. § 155 (b) *, § 19(b) of the Act of February 5, 1917, as amended by § 20 of the Act of June 28, 1940, 54 Stat. 671, which provides in part:

> "(b) Any alien of any of the classes specified in this subsection, in addition to aliens who are deportable under other provisions of law, shall, upon warrant of the Attorney General, be taken into custody and deported:

> "(1) Any alien who, at any time within five years after entry, shall have, knowingly and for gain, encouraged, induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of law."

After exhausting his administrative remedies, appellant on December 7, 1953, filed his petition for a writ of habeas corpus challenging the legality of his detention under the warrant of deportation. He alleged that the finding of deportability was not based upon reasonable, substantial and probative evidence,[2] and that the hearings were unfair and in violation of his constitutional rights.

The writ issued and appellee made his return. On March 15, 1954, the district court ordered the writ discharged and appellant remanded to custody. It is from this judgment that the appeal is taken.

Appellant's 1949 conviction for violation of 8 U.S.C. § 144 established that he knowingly encouraged, induced, assisted, abetted, or aided another alien to enter the United States in violation of law, and appellant's crossing of the border on July 16, 1949, constituted an entry. The only additional element in connection with 8 U.S.C. § 155(b), the statute under which appellant was ordered deported, is that of *gain*. Appellant claims that he was helping the aliens because of a shortage of orange pickers in the Corona area. He denies receiving any money or anything of value from the aliens; he also denies any conversation regarding the payment of money. In short, he denies that his actions were in any way motivated by gain.

The record, however, does not bear out these claims. Appellant, in a sworn statement dated November 28, 1949, admitted that he had an arrangement with Juan Ramirez to receive fifty dollars for bringing the latter's alien brother into the United States, that he went to Tijuana pursuant to that agreement, contacted the brother, and after the brother crossed the international line, appellant was transporting him into the interior of California when he was apprehended by immigration authorities. At the hearings, appellant was shown the statement and admitted he understood what it contained and that he had made the statement. In addition, appellant testified at the hearings that the aliens told him they would give him fifty dollars when they got work in California.

---

**1.** The pertinent portion of 8 U.S.C. § 144 provides as follows:

"Any person, * * * who shall bring into * * * the United States, * * * or shall attempt, by himself or through another, to bring into * * * the United States, * * * any alien not duly admitted by an immigrant inspector or not lawfully entitled to enter or to reside within the United States, shall be deemed guilty of a misdemeanor, * *." Now 8 U.S.C.A. § 1324(a).

* Now 8 U.S.C.A. § 1251(a) (13).

**2.** As provided in 8 U.S.C. § 1252(b) (4):
"(4) no decision of deportability shall be valid unless it is based upon reasonable, substantial, and probative evidence."

■ These admissions by appellant, together with his conviction under 8 U.S.C. § 144, provide reasonable, substantial and probative evidence to support the finding that appellant violated the deportation statute.

At the hearings, statements by the four aliens who were apprehended in appellant's car were received in evidence over objection that appellant was not present when they were made; that the statements were not taken in connection with any proceedings against appellant; that the statements were not original documents, but were translated from Spanish; that the signatures were not identified as being those of the aliens; and that the use of the statements violated appellant's constitutional right to a fair hearing, in that there was afforded no right to cross-examine or to be confronted by the aliens.

■■ An alien, in deportation proceedings, must be afforded due process of law, including a fair hearing. But it is well settled that administrative tribunals, such as here involved, are not bound by the strict rules of evidence which apply in judicial proceedings. Hyun v. Landon, 9 Cir., 1955, 219 F.2d 404; United States v. O'Rourke, 8 Cir., 1954, 211 F.2d 609, certiorari denied 348 U.S. 827, 75 S.Ct. 47; Schoeps v. Carmichael, 9 Cir., 1949, 177 F.2d 391; Berkman v. Tillinghast, 1 Cir., 1932, 58 F.2d 621; United States v. Brough, 2 Cir., 1926, 15 F.2d 377.

■ Under these less stringent rules, administrative tribunals may receive evidence which a court would regard as legally insufficient without vitiating the proceedings. As stated in United States v. Brough, supra, 15 F.2d at page 379: "The court may admit hearsay evidence, the only limitation upon its procedure being that a hearing, though summary, must be fair." See also Christianson v. Zerbst, 10 Cir., 1937, 89 F.2d 40; United States ex rel. Ross v. Wallis, 2 Cir., 1922, 279 F. 401; Morrell v. Baker, 2 Cir., 1920, 270 F. 577; United States ex rel. Diamond v. Uhl, 2 Cir., 1920, 266 F. 34. In view of these authorities, we cannot say that there was error in admitting the statements of the aliens. Furthermore, the mere fact that incompetent evidence is received and considered does not in itself establish a want of due process such as would require a reversal on that ground. Hyun v. Landon, supra.

■ As to appellant's claim that denying his right to cross-examine the four aliens rendered the hearings unfair and violated his constitutional rights, it may be conceded that such a denial under the particular facts of a given case may render the hearing unfair. In the relevant cases cited by appellant to sustain his claim, the witnesses were either available for production and not produced, or no showing was made that they could not be so produced to testify. See Gonzales v. Zurbrick, 6 Cir., 1930, 45 F.2d 934, 937; In re Sugano, D.C.S.D.Cal.1930, 40 F.2d 961, 963; Maltez v. Nagle, 9 Cir., 1928, 27 F.2d 835, 837; Svarney v. United States, 8 Cir., 1925, 7 F.2d 515, 517; Whitfield v. Hanges, 8 Cir., 1915, 222 F. 745, 753.

■ In the present case, the record clearly reveals that the four aliens were granted voluntary departure to Mexico in 1949, were no longer in the United States, and their whereabouts were unknown. Under these facts, the rule is well stated in United States v. O'Rourke, supra, 211 F.2d at page 611: "Failure to produce, for cross-examination, witnesses who cannot be found or whose presence cannot be procured or is not requested, does not make a deportation hearing unfair." See Quock So Mui v. Nagle, 9 Cir., 1926, 11 F.2d 492; United States v. Brough, supra.

■ Even apart from the statements of the four aliens there was sufficient evidence to sustain the finding of deportability, and there is no showing that the hearing officer relied on the statements. There is no showing that the hearing was unfair, and we find no error.

The judgment of the district court is affirmed.