**TASSARI v. SCHMUCKER, District Director of Immigration, et al.**

No. 3218.

Circuit Court of Appeals, Fourth Circuit.

Nov. 7, 1931.

J. L. Morewitz, of Norfolk, Va. (Morewitz & Morewitz, of Newport News and Norfolk, Va., on the brief), for appellant.

Robt. H. Talley, U. S. Atty. (Alvah H. Martin, Asst. U. S. Atty., both of Norfolk, Va., on the brief), for appellees.

Before PARKER and NORTHCOTT, Circuit Judges, and CHESNUT, District Judge.

CHESNUT, District Judge.

The appellant, who is admittedly an alien, is in custody under a warrant for deportation issued by the Acting Secretary of Labor. He petitioned the District Court for a writ of habeas corpus for his release. The hearing resulted in a dismissal of the petition and a remand of the appellant to the custody of the District Director of Immigration for deportation. This appeal has been taken from the order of dismissal and remand, which also stayed actual deportation pending appeal.

The warrant for deportation states that the cause for deportation is that the alien (who entered this country in 1906) "has been sentenced, subsequent to May 1, 1917, to imprisonment, more than once for a term of one year or more for the commission subsequent to his entry of a crime involving moral turpitude, to wit, entering with intent to steal." The authority for deportation of aliens for the stated cause is found in title 8, § 155, of the United States Code Annotated, which also provides as follows: "In every case where any person is ordered deported from the United States under the provisions of this subchapter, or of any law or treaty, the decision of the Secretary of Labor shall be final." The existence of the cause for deportation was found as a fact by the Department of Labor as a result of a hearing given to the alien at which he was represented by counsel.

The only questions for our consideration are whether the record shows the alien did have a fair hearing; whether the determination of fact by the Department is supported by substantial evidence; and whether the law was correctly applied by the Department of Labor. United States ex rel. Vajtauer v. Commissioner of Immigration, 273 U. S. 103, 47 S. Ct. 302, 71 L. Ed. 560; Zakonaite v. Wolf, 226 U. S. 272, 285, 33 S. Ct. 31, 57 L. Ed. 218; Lewis v. Frick, 233 U. S. 291, 300, 34 S. Ct. 488, 58 L. Ed. 967; United States ex rel. Bilokumsky v. Tod, 263 U. S. 149, 44 S. Ct. 54, 68 L. Ed. 221; Mason v. Tillinghast, 27 F.(2d) 580 (C. C. A. 1st). The contention urged by counsel for the appellant is that the hearing was not fair because the evidence before the Inspector of Immigration acting for the Department of Labor was legally insufficient to establish the fact that the appellant had been *twice sentenced*.

To the petition for the writ of habeas corpus the respondent the Director of Immigration filed an answer justifying the warrant for deportation, and as exhibits therewith, a complete record of the deportation proceedings including a stenographic report of the testimony taken at the hearing given the appellant, and as a part thereof, certificates (under seal of the court) of the clerk of the court of oyer and terminer, general jail delivery and quarter sessions of the peace, of the city and county of Philadelphia, showing that on November 16, 1917, Francesco Tassari (on Bill No. 241) had been convicted of "entering with intent to steal" and sentenced to the State Penitentiary for a period of not less than two years and six months, and not more than three years; and that on January 18, 1918, one Frank Ticcro had been convicted of "entering with intent to steal" and sentenced to the State Penitentiary for a period of not less than two years nor more than three years, to run concurrently with sentence imposed on November 16, 1917, on Bill 241.

The important question at the hearing was the identity of the appellant with the defendants named in these two criminal cases. The stenographic report of the testimony taken shows that the appellant admitted that he had been known by the names of the persons so sentenced and that he had been convicted and sentenced in the first case, and brought into the court on the second case, but he stated in effect he did not understand just what had happened in the disposition of the second case; and in terms denied the second sentence. He did not offer then, and does not now offer, to show that in fact he was not the person named in the indictments. He was represented by counsel at the hearing, and it does not appear that they made objection to the legal insufficiency of the clerk's certificates as evidence of the two sentences. The only objection that could have been made to the certificates was the technical one that they were not the full record of the two cases and were not exemplified under the act of Congress. Later, and before final hearing in the District Court, the respondent, the District Director of Immigration, obtained and filed with his supplemental answer exemplified copies of the indictments and docket entries, showing the sentences in the two cases; and at the hearing in the District Court the appellant testified more fully concerning his relation to the cases, from which it appears beyond any reasonable doubt that he was the person convicted and sentenced in both cases although under different names.

But apart from the evidence produced in the District Court it is our opinion that the conclusion reached by the Department of Labor as a result of the hearing given the alien was supported by substantial evidence. United States ex rel. Vajtauer v. Commissioner of Immigration, 273 U. S. 103, 47 S. Ct. 302, 71 L. Ed. 560. While it is well settled that a fair hearing to the alien is a condition precedent to deportation (Kwock Jan Fat v. White, 253 U. S. 454, 458, 464, 40 S. Ct. 566, 64 L. Ed. 1010; Kaoru Yamataya v. Fisher, 189 U. S. 86, 23 S. Ct. 611, 47 L. Ed. 721), it is also well settled that the hearing may be summary, and the technical rules of evidence necessarily observed in a judicial proceeding are not applicable. Morrell v. Baker, 270 F. 577 (C. C. A. 2nd). The nature of the proceeding is civil and not criminal. United States ex rel. Bilokumsky v. Tod, 263 U. S. 149, 44 S. Ct. 54, 68 L. Ed. 221; Mahler v. Eby, 264 U. S. 32, 39, 44 S. Ct. 283, 68 L. Ed. 549. Although the clerk's certificates not having been exemplified would not have been technically admissible against the appellant in a plenary judicial proceeding, they constituted substantial evidence for consideration of the Department in the summary proceeding. It was so held by the Circuit Court of Appeals for the Sixth Circuit in Siniscalchi v. Thomas, 195 F. 701, with respect to a similar certificate.

We have carefully examined the full stenographic record of the hearing given the alien to ascertain if it was in all respects fair in accordance with the standards of fundamental justice associated with the conception of due process of law. Kwock Jan Fat v. White, 253 U. S. 454, 458, 40 S. Ct. 566, 64 L. Ed. 1010.

It appears that the alien was represented by counsel, was informed of the purpose of the hearing, given an opportunity to inspect the warrant for his arrest, and the evidence on which it was based, and a full opportunity to show cause against his deportation. He admitted that he was an alien, that he entered this country in 1906, had never applied for naturalization, and that he had been known by the several names mentioned, as well as others, and in effect admitted his identity with the persons named in the two separate criminal cases above mentioned. At the time of his hearing (March 30, 1926) he was in the Norfolk Jail serving a sentence of three years for assault. The warrant for deportation issued July 22, 1926, was stayed until his release from prison, but the record further shows that thereafter, on June 13, 1927, he was again sentenced to serve five years in the Virginia State Penitentiary by the corporation court No. 2 of the city of Norfolk, but for what crime the record does not state.

In our opinion the hearing given the alien was entirely fair and the conclusion reached at the time by the Department of Labor was justified by legally sufficient evidence which, from the further testimony produced at the habeas corpus hearing in the District Court, was shown to have been correct beyond any reasonable doubt. The obvious policy of the statute is the protection of the American public from habitual criminals. The statutory test in this respect, as affecting an alien who has been in this country for more than five years, is whether he has been sentenced more than once for a crime involving moral turpitude for a period of a year or more. It is not contended that the crimes committed by this alien prior to his hearing did not involve moral turpitude. The offenses were in the nature of burglary. Robbery, larceny, and crimes involving fraud have been held to be

573

crimes of moral turpitude within the meaning of the statute. Paladino v. Commissioner of Immigration, 43 F.(2d) 821 (C. C. A. 2d); Tillinghast v. Edmead, 31 F.(2d) 81 (C. C. A. 1st); Wilson v. Carr, 41 F.(2d) 704, 706 (C. C. A. 9th); Ng Sui Wing v. United States, 46 F.(2d) 755 (C. C. A. 7th); U. S. ex rel. Robinson v. Day, 51 F.(2d) 1022 (C. C. A. 2nd).

■ Counsel for appellant urges upon us that the appellant is not subject to deportation because the separate sentences in this case were made to run *concurrently,* and supports this contention by reference to United States ex rel. Mignozzi v. Day, 51 F.(2d) 1019, 1020, where the Second Circuit Court of Appeals (with Circuit Judge Chase dissenting) held that a single blanket sentence to a term of seven years, on a plea of guilty to two indictments, one containing two counts, charging in various ways crimes relating to four counterfeit $20 bills, the "sentences to run concurrently," did not gratify the statutory requirement of "sentenced more than once." The basis of the decision as appears from the majority opinion by Judge Learned Hand seems to be that the analysis of the several counts of the two indictments shows that there was in substance but a single criminal act punished by a single sentence. Judge Hand said: "Whether all this could be treated as four, or even five, crimes is immaterial; morally the transaction was a single wrong, to be expiated by a single punishment, and the judge seems so to have regarded it." In the prior case of Johnson v. U. S. ex rel. Pepe, 28 F. (2d) 810, the same court held that an alien was subject to deportation as "sentenced more than once" where he had committed four separate crimes of arson at different times and at different buildings for which he was prosecuted in a single indictment of several counts and sentenced "for a term of one year or more on each of four counts, the sentences to run consecutively." Circuit Judge Swan, writing the opinion for the court, said: "In its natural and reasonable meaning 'sentenced more than once to such a term of imprisonment' refers to the number of separate crimes for which sentences are imposed, not to the form of the indictment or the procedure of a single trial." In Nishimoto v. Nagle, 44 F.(2d) 304 (C. C. A. 9th), it was held that the alien had been "sentenced more than once" where he was prosecuted for the issuance of five separate checks with intent to defraud on one information containing several counts, and where the court imposed the sentence upon each separate count that the

appellant be "imprisoned in the state prison of this state" and that "these sentences and terms of imprisonment shall run concurrently." The court said: "It will be observed that the statute does not limit the power of deportation to a second conviction, but is based upon the commission of a number of offenses for which the alien has been sentenced. The form of the sentence is obviously of no consequence. The purpose of Congress undoubtedly was to provide for the deportation of a man who committed more than one offense involving moral turpitude for which he had been convicted and upon which conviction and sentence has been imposed; whether the sentence runs concurrently or consecutively is entirely immaterial from the standpoint of the purpose of the law."

In our opinion the correct principle to be deduced from these decisions is that where the crimes are separate and distinct and there is a separate sentence for each offense it must be held within the meaning of the act that the alien has been "sentenced more than once" even though the separate sentences are made to run concurrently and not consecutively. In the instant case there were two separate crimes, two separate indictments, two separate trials, and two separate sentences. The alien was arrested August 12, 1917, for the unlawful entry into the store of one Hyman Beerman; was released on bond on this charge, and while out on bond and before the disposition of the case, he was again arrested November 5, 1917, charged with the unlawful entry of the store of one Hyman Slotsky. On November 16, 1917, he was tried on the second charge and sentenced to imprisonment of two and one-half to three years, and later, on January 18, 1918, again tried and convicted and sentenced to not less than two years and not more than three years for the first offense, to run concurrently with the first sentence. As the crimes were separate and distinct and successive, and the sentences likewise separate and distinct, the alien is clearly brought within both the language and the intent of the statute.

We have limited our consideration of the validity of the deportation warrant to the two Philadelphia cases on which it was particularly based, but it also appears in the record as a finding of the Immigration Inspector that this alien during his stay in this country prior to the date of the hearing on March 30, 1926, had been arrested at least twelve times and convicted on at least nine occasions, including the two Philadelphia convictions, and since then as above already noted, he has been

sentenced to the Virginia State Penitentiary for five years. If such an habitual criminal is not subject to deportation it would seem that the purpose of the act would be ineffective. For these reasons the order dismissing the application for habeas corpus and remanding the alien to the custody of the Department of Labor for deportation is

Affirmed.