UNITED STATES of America ex rel.
Margarita Julia LEON,
Petitioner,

v.

Edward J. SHAUGHNESSY, District Di-
rector of Immigration and Natural-
ization, Respondent.

United States District Court
S. D. New York.

July 24, 1956.

Newman, Aronson & Neumann, New
York City, Mannis Neumann, New York
City, of counsel, for petitioner.

Paul W. Williams, U. S. Atty., for
Southern District of New York, New
York City, Charles J. Hartenstine, Jr.,
Sp. Asst. U. S. Atty., Roy Babitt, At-
ty., Immigration and Naturalization
Service, New York City, of counsel, for
respondent.

LEVET, District Judge.

This is a writ of habeas corpus to determine the legality of the detention of the above-named relator, Margarita Julia Leon, under a final order and warrant of deportation. This proceeding by writ of habeas corpus seeks to review the administrative proceedings as set forth in an administrative record which was submitted to the Court.

The validity of the deportation order depends upon conclusions reached in hearings before a Special Inquiry Officer of the Immigration and Naturalization Service, who determined that the relator was a person of "constitutional psychopathic inferiority" at the time of her arrival in the United States under Sections 3 and 19 of the Immigration Act of 1917. This report was affirmed by the Board of Immigration Appeals. The statutes involved are as follows:

The Immigration Act of 1917, Section 3:

"That the following classes of aliens shall be excluded from admission into the United States: All * * * persons of constitutional psychopathic inferiority * * *".[1]

Section 19(a):

"That at any time within five years after entry, any alien who at the time of entry was a member of one or more of the classes excluded by law; * * * any alien who within five years after entry becomes a public charge from causes not affirmatively shown to have arisen subsequent to landing; * * * shall, upon warrant of the Attorney General, be taken into custody and deported * * *".[2]

The facts are as follows:

The petitioner was born in Cuba in 1918. She arrived in the United States for permanent residence on May 23, 1942. She thereafter re-entered on May 10, 1948, in possession of a re-entry permit. She was committed to Bellevue Hospital on December 31, 1950 and ad-mitted to Central Islip State Hospital, Central Islip, Long Island, on January 11, 1951, where she received treatment until May 27, 1951.

Some of the conclusions reached by the examiner depend in part upon clinical summaries of family and personal history obtained while the relator was at the Central Islip State Hospital (see Exhibit 3A). This history was summarized as follows:

"Born Cuba Oct. 1, 1918. Neglected school, ran away from home at age 15. Frequent quarrels with family. Has had three marriages, the first at age 15. Has lived for 9 years with one man without marriage. Has drunk excessively. About 3 years ago was in Bellevue Psychiatric Hospital in connection with alcoholism. On December 25, 1950 seriously injured a man in a fight; December 31, 1950 was arrested and admitted to Bellevue Hospital, committed to Central Islip State Hospital January 11, 1951. For 10 months has expressed delusions about a secret organization, has accused husband and friends of belonging to it and has interpreted their actions as codes and signals."

The diagnosis from Islip by Dr. Sara S. Prince, M. D., Supervising Psychiatrist, was "Psychosis with Psychopathic Personality; Paranoid Trends." The diagnosis and syndromes was as follows:

"* * * unstable temperament exhibited in fits of anger, combativeness, and infliction of physical injury on others; anti-social and impulsive behavior; expression of paranoid delusional ideas."

The report from Central Islip signed by Dr. Sara S. Prince as to the prognosis, states: "Unfavorable for behavior tendencies, favorable for attack of emotional excitement." As to the extent, if any, in which ability to earn a living will be impaired, Dr. Prince stated: "Ability

---

1. 8 U.S.C.A. formerly 136, now § 1182.

2. 8 U.S.C.A. formerly 155(a) now § 1251.

to earn a living will not be affected during periods of improvement or recovery."

As to whether petitioner was a person of constitutional psychopathic inferiority at the time of the last entry into the United States, the report by Dr. Prince stated: "Patient was in my opinion a person of constitutional psychopathic personality." Dr. Prince's reasons for her opinion were as follows:

"Patient was a problem in childhood, eloped from school with a man at age of 15, has had two divorces and has lived without marriage with a man for the past nine years, except for brief interval when she married and deserted husband. Described by others as unreliable, untruthful, intemperate, quarrelsome and bad tempered."

Then Dr. Prince stated:

"* * * it is further certified that at the time of entry into the United States the alien was a person of constitutional psychopathic inferiority, as defined in Section 59 of the Regulations of the U. S. Public Health Service governing the medical examination of aliens, revised August 1930."

Instructions in respect to persons of constitutional psychopathic inferiority are contained in Regulations Governing the Medical Examinations of Aliens, Revised August, 1930, U. S. Treasury Department, Public Health Service, Miscellaneous Publication No. 5, p. 13, No. 59, and are set forth in the footnote.[3]

The same publication states that the diagnosis is as a rule based upon the social history of the individual and without such history it is seldom possible to make it.[4]

It has been held that an alien whose deportation has been ordered administratively under the Immigration and Nationality Act of 1952, 66 Stat. 163, 8 U.S.C.A. § 1101 et seq., may obtain a judicial review of such order by an action in a federal district court for a declaratory judgment and injunctive relief under Section 10 of the Administrative Procedure Act, 5 U.S.C.A. § 1009. Shaughnessy v. Pedreiro, 1955, 349 U.S. 48, 75 S.Ct. 591, 99 L.Ed. 868. On the other hand, it was decided that when the proceeding was commenced under the Act of February 5, 1917, deportees are deprived of all right of judicial review except the writ of habeas corpus. Heikkila v. Barber, 1953, 345 U.S. 229, 73 S.Ct. 603, 97 L.Ed. 972. The petitioner here recognized the latter rule and since this deportation proceeding was commenced under the former act, she has proceeded by writ of habeas corpus.

Under the 1917 Act, the regulations affect the conduct of hearings. 8 C.F.R. 242, 53(b) provides in part as follows:

"*Special inquiry officers; general duties.* The special inquiry officer shall conduct a fair and impartial hearing. No decision of deportability shall be valid unless based upon reasonable, substantial and proba-

---

3. "*Persons of Constitutional Psychopathic Inferiority.*—There shall be certified as cases of constitutional psychopathic inferiority all psychopathic characters such as 'chronic litigants,' 'sexual perverts,' 'pathological liars,' 'dipsomaniacs,' 'moral imbeciles,' and mentally peculiar persons who because of eccentric behavior, defective judgment, or abnormal impulses are in repeated conflict with social customs and constituted authorities. Well-marked cases of psychasthenia and hysteria that have developed on an unstable nervous constitution should also be certified for constitutional psychopathic inferiority."

4. "*Constitutional Psychopathic Inferiority.*—The concept constitutional psychopathic inferiority embraces a variety of people of unusual temperament and uncontrolled antisocial impulses. Those people may have subnormal, normal, or superior intelligence; they may appear to have a pleasing personality, but many of them have paranoid trends.

"The diagnosis of constitutional psychopathic inferiority is, as a rule, based upon the social history of the individual and without this history it is seldom possible to make it. The condition is described briefly in the Manual of the Mental Examination of Aliens." (p. 45.)

tive evidence. He shall exclude from the record any evidence that is irrelevant, immaterial, or unduly repetitious."

There are certain well-established interpretations of the powers of the federal district court under proceedings such as this.

■■ Administrative boards are not bound by common law rules of evidence. United States ex rel. Ng Kee Wong v. Corsi, 2 Cir., 1933, 65 F.2d 564, 565; see American University v. Prentiss, D.C.Cir., 113 F.Supp. 389, 393 (op. by Holtzoff, J.), affirmed, 1954, 94 U.S.App. D.C. 204, 214 F.2d 282, certiorari denied, Wrather v. American University, 348 U.S. 898, 75 S.Ct. 217, 99 L.Ed. 705. It is well established that procedure in deportation cases will not be subject to technical tests, although certain basic requirements must not be violated. Gonzales v. Zurbrick, 6 Cir., 1930, 45 F.2d 934, 936. Thus, it was said in United States ex rel. Smith v. Curran, 2 Cir., 1926, 12 F.2d 636, 637:

"* * * It is now long established, in proceedings in immigration cases, that neither the hearsay rule nor the best evidence rule, nor, indeed, any of the common-law rules of evidence, need be observed. A board of special inquiry, which determines these cases, may consider hearsay evidence and administrative findings, although based upon evidence which would not be competent in a court of law, which evidence may not be attacked upon habeas corpus."

■ In habeas corpus proceedings the alien does not prove he had an unfair hearing merely by proving the decision to be wrong, Tisi v. Tod, 264 U.S. 131, 133, 44 S.Ct. 260, 68 L.Ed. 590, or by showing that incompetent evidence was admitted and considered. Vajtauer v. Com'r of Immigration, 273 U.S. 103, 106, 47 S.Ct. 302, 71 L.Ed. 560; Bridges v. Wixon, 326 U.S. 135, 156, 65 S.Ct. 1443, 89 L.Ed. 2103. Findings to be valid cannot be based upon hearsay alone, nor upon hearsay corroborated by a mere scintilla. The test is whether in the individual case before the court there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Willapoint Oysters v. Ewing, 9 Cir., 1949, 174 F.2d 676, 691, certiorari denied 338 U.S. 860, 70 S.Ct. 101, 94 L.Ed. 527, citing Consolidated Edison Co. v. National Labor Relations Board, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126. Relaxation of the ordinary rules of procedure and evidence does not invalidate the proceedings provided the substantial rights of the parties are preserved, or dispense with the right of cross-examination, and although administrative agencies may be relieved of non-observance of strict common-law rules of evidence, the hearings must still be conducted with fundamental principles which inhere in due process of law. Southern Stevedoring Co. v. Voris, 5 Cir., 1951, 190 F.2d 275, 277. The right to cross-examine, even in deportation proceedings, is a constitutional one. Gonzales v. Zurbrick, 6 Cir., 1930, 45 F.2d 934, 937.

It has also been stated "that administrative orders, quasi judicial in character, are void if a hearing was denied; if that granted was inadequate or manifestly unfair; if the finding was contrary to the 'indisputable character of the evidence.'" Interstate Commerce Commission v. Louisville and Nashville Railroad Company, 227 U.S. 88, 91, 33 S.Ct. 185, 186, 57 L.Ed. 431. Where, however, evidence is improperly received and but for that evidence is wholly speculative whether the requisite finding would have been made, then there is deportation without a fair hearing which may be corrected by habeas corpus. Vajtauer v. Com'r of Immigration, 273 U.S. 103, 47 S.Ct. 302, 71 L.Ed. 560; Bridges v. Wixon, 326 U.S. 135, 156, 65 S.Ct. 1443, 89 L.Ed. 2103.

The gist of relator's claims which she contends invalidate the deportation order are in effect as follows:

(1) That there is insufficient evidence to show that she is now and was at the time of her admission in 1948 subject to the condition called constitutional psychopathic inferiority;

(2) That the conclusions of the psychiatrist acting for the Commissioner or for the United States Public Health Service are based solely upon inadmissible records and hearsay;

(3) That the procedure followed was not in accordance with the principles of practice and evidence applicable to such hearings.

The facts which are not disputed show:

(1) Admission to Central Islip Hospital on January 11, 1951; treatment there until May 27, 1951, with observation of relator which this made possible;

(2) A report on July 2, 1951, by the United States Public Health Service certifying the relator as being affected with Class A constitutional psychopathic inferiority at the time of her last entry into the United States on May 10, 1948.

The relator attempts to isolate the respective background of her history to show that no one of the separate factors involves constitutional psychopathic inferiority under the statute. For example, her counsel alleges that (a) elopement at the age of fifteen; (b) three marriages and perhaps as many divorces; (c) an extra-marital relationship; and (d) one episode of alcoholic conduct, do not separately or even collectively prove the statutory condition alleged.

It is true that one specialist (one Dr. Luria) in the field of mental hygiene testified that he had observed the relator twice weekly for a few weeks and that from his examination he found her to be within the normal range mentally and that he had not found any evidence that she was a person of constitutional psychopathic inferiority. He admitted, however, that he was not an expert in the field of psychiatry and that it was possible for the Public Health Service to make a diagnosis based upon a case history of the relator without actually observing her or examining her. Subsequently, another report of a so-called neuro-psychiatric evaluation of the relator was submitted by one, Samuel Allentuck, Ph.D., M.D. He was not produced for examination.

 Three certificates of doctors of the United States Public Health Service made on separate occasions concurred in substance in the findings of the Supervising Psychiatrist of the Central Islip Hospital. In any case, there was substantial evidence to support the conclusions of the Special Inquiry Officer whose report led to the deportation order.

It is not for this Court to supersede the views of the psychiatrists whose conclusions were accepted by the Special Inquiry Officer and which in part at least were based upon direct observation of the relator. The powers of this Court in deportation cases such as this are limited. The general rule is stated in United States ex rel. Vajtauer v. Com'r of Immigration, 273 U.S. 103, 106, 47 S.Ct. 302, 304, 71 L.Ed. 560, as follows:

"Deportation without a fair hearing or on charges unsupported by any evidence is a denial of due process which may be corrected on habeas corpus. Cf. Chin Yow v. United States, 208 U.S. 8, 28 S.Ct. 201, 52 L.Ed. 369; Kwock Jan Fat v. White, 253 U.S. 454, 40 S.Ct. 566, 64 L.Ed. 1010. But a want of due process is not established by showing merely that the decision is erroneous, Chin Yow v. United States, supra, 208 U.S. 13, 28 S.Ct. 201, or that incompetent evidence was received and considered. See Tisi v. Tod, 264 U.S. 131, 133, 44 S.Ct. 260, 68 L.Ed. 590. Upon a collateral review in habeas corpus proceedings, it is sufficient that there was some evidence from which the conclusion of the administrative tribunal could be deduced and that it committed no error so flagrant as to convince a court of the essential unfairness of the trial. Tisi v. Tod, supra." See also United States ex

rel. Powlowee v. Day, 2 Cir., 1929, 33 F.2d 267, certiorari denied 1929, 280 U.S. 495, 50 S.Ct. 40, 74 L.Ed. 641; United States ex rel. Fong On v. Day, 2 Cir., 1932, 54 F.2d 990.

It is my opinion that the clinical diagnosis by the physician in the State Hospital at Central Islip was properly admitted in evidence. This evidence consisted of a certificate by the Supervising Psychiatrist of the Hospital made after a personal examination of the relator during her hospitalization there and included a certain history. Counsel for the relator declined the opportunity to cross-examine the psychiatrist in relation to these findings. Having so declined to cross-examine, the relator cannot now object to the report on the ground of hearsay. Wigmore on Evidence (3rd Ed.1940) § 1371; Mental Hygiene Law of New York, McK.Consol. Laws, c. 27, §§ 20, 23, 34(9); Scolavino v. State, 1946, 187 Misc. 253, 62 N.Y.S.2d 17, modified on other grounds, 1946, 271 App.Div. 618, 67 N.Y.S.2d 202, affirmed 1947, 297 N.Y. 460, 74 N.E.2d 174.

The procedure followed was not unreasonable or unfair under the applicable principles. Hearings in deportation were held before a Special Inquiry Officer commencing May 11, 1953. A clinical history report from the Supervising Psychiatrist at Central Islip Hospital, who personally examined the relator, was received in evidence. Counsel for the relator in effect, although he stated his reasons, declined to interrogate the Supervising Psychiatrist (see minutes, p. 25). After the Special Inquiry Officer found that relator was deportable, the appeal was heard and reheard by the Board of Immigration Appeals, which sustained the findings. At all times the relator was represented by counsel of her own choosing. She had an opportunity to testify, to call witnesses and present evidence on her own behalf and to cross-examine the witnesses against her.

Accordingly, the writ must be dismissed.

It is so ordered.