**HEE CHAN, Plaintiff,**

v.

**Alva L. PILLIOD, District Director, Chicago District, United States Department of Justice, Immigration and Naturalization Service, Defendant.**

**No. 59 C 376.**

United States District Court
N. D. Illinois, E. D.

Nov. 25, 1959.

O'Hara & Greenhouse, Chicago, Ill., for plaintiff.

R. Tieken, U. S. Atty. for Northern Dist. of Illinois, Chicago, Ill., for defendant.

PERRY, District Judge.

Hee Chan, plaintiff herein, was ordered deported after a hearing before a Special Inquiry Officer of the Immigration and Naturalization Service.

In this action (in which jurisdiction is based on 8 U.S.C.A. § 1329, 5 U.S.C.A. §§ 1009 and 1011, and the Federal Declaratory Judgment Act, 28 U.S.C.A. §§ 2201, 2202), plaintiff seeks to have all orders and decisions of the defendant District Director reviewed and to have the said District Director restrained from enforcing said order of deportation.

This matter is before the court on the motion of the defendant District Director for summary judgment.

It is undisputed that plaintiff Hee Chan was born in China; that on August

8, 1950, he entered the United States as a bona fide nonimmigrant and was admitted at Honolulu, Hawaii; that he has since resided continuously in the United States, and, quoting the complaint, that "Certain hearings have been held resulting in an order for deportation, requiring the plaintiff to present himself at the defendant's office ready for deportation to Hong Kong on March 7, 1959."

The certified copy of transcript of hearing had before the Special Inquiry Officer discloses that the proceedings were conducted through an official interpreter because the plaintiff said he could speak and understand only the Chinese language.

The transcript shows that during the hearing, and after the plaintiff had acknowledged receipt of notice of the hearing, the following questions were asked and answers made thereto:

"Q. In this hearing you may be represented by an attorney or by any other person authorized to practice before officers of this Service. Such representation must be obtained by you without expense to the government. Do you wish to have anyone represent you in this hearing? A. No.

"Q. In this hearing you may examine the evidence against you. You may present evidence in your own behalf; you may cross-examine any witnesses presented by the government and any objections you make will be entered on the record. Do you understand? A. Yes."

Then, in answer to questions put to him by the Special Inquiry Officer, plaintiff admitted: (1) That he is not a citizen or national of the United States; (2) that he is a native of China and a national of China; (3) that he last entered the United States at Honolulu, Territory of Hawaii on August 10, 1950; (4) that he was admitted as a nonimmigrant visitor for pleasure and was authorized to remain in this country only until October 9, 1950; and (5) that he has remained in this country longer than he was permitted.

Again quoting from the transcript:

"Q. The deportation charge against you is under Section 241(a)(2) of the Immigration and Nationality Act [8 U.S.C.A. § 1251(a)(2)]. The charge is that you are subject to deportation because after being admitted to this country as a nonimmigrant under the Immigration Act of 1924 you have remained in this country for a longer time than permitted. Do you fully understand this charge? A. Yes.

"Q. Do you admit that you are subject to deportation on that charge? A. Yes.

Plaintiff further testified at the hearing that he is married, has a small daughter, and that both his wife and child live in Hong Kong.

The Special Inquiry Officer asked: "Do you want to apply for the privilege of leaving the United States voluntarily at your own expense instead of being deported?" to which plaintiff replied: "I do not think I would be able to obtain visas or other necessary documentation to go to any other countries outside of the United States."

During the hearing, plaintiff expressed a fear that if he were deported to Communist China he would suffer physical persecution at the hands of the Communists, whereupon the Special Inquiry Officer advised him that he could request a stay of deportation under Section 243(h) of the Immigration and Nationality Act, 8 U.S.C.A. § 1253(h).

The transcript then shows that after the Special Inquiry Officer had advised Hee Chan, the plaintiff, that he was entering the order of deportation, the following occurred:

"Q. The order that I have entered is final unless an appeal is taken to the Board of Appeals in Washington, D. C. Do you want to appeal from the order I have entered? A. I reserve the right to appeal.

"Q. I will furnish you with a copy of the order and with the appeal forms and the appeal, if filed,

must be submitted by February 3, 1958. Do you understand? A. Yes.

"Q. Have you fully understood the interpreter in this hearing? A. Yes."

Plaintiff's brief in opposition to defendant's motion for summary judgment argues that the motion should be denied because "there are many genuine issues of fact in this cause," one of which is "whether or not the entire and complete record necessary to review the matter has been filed." Plaintiff continues, "The record should contain the Order Supervision issued by the defendant to the plaintiff;

"notice to the alien of the country to which the deportation has been directed;

"application Form 245 and Motion under Section 15 filed on March 5, 1959, and referred to in paragraphs (7), (8), and (9) of the plaintiff's complaint;

"motion under Section 243(h) of the Immigration and Nationality Act previously filed,"

and concludes: "These documents are necessary for an adequate review of the case and the record, and, in their absence the plaintiff should be given an opportunity to present secondary evidence of these material documents or supply copies where available."

Plaintiff's motion to compel the defendant District Director to file a complete record (specifically the above listed documents) was denied by another judge of this court, sitting in summer session. Subsequently, however, this court directed plaintiff to produce said documents and they are now before the court.

A letter dated February 24, 1958, and directed to the plaintiff by the Assistant Director for Deportation, Chicago, informed him that "Pursuant to the order of deportation in your case and Section 243 of the Immigration and Nationality Act, your deportation to China has been directed."

A later letter, however, dated February 26, 1959, and addressed to plaintiff by the same Assistant District Director for Deportation, informed plaintiff that—

"Arrangements have now been completed to effect your deportation to Hong Kong, British Crown Colony.

"In accordance with part one of an Order of Supervision executed by you on August 27, 1958, you are hereby called upon to surrender into the custody of the United States Immigration and Naturalization Service at 2335 South Indiana Avenue, Chicago, Illinois, at 12:00 noon Saturday, March 7, 1959. It is expected that you will be completely ready for return to Hong Kong."

It appears that on March 5, 1959, plaintiff filed with the Immigration and Naturalization Service an application for relief as a refugee from Communism under Section 15 of the Act of September 11, 1957 (Public Law 85–316 (85th Congress, First Session), 71 Stat. 643, 50 U.S.C.A.Appendix, § 1971a note). Before the court is a copy of such application in which the plaintiff alleges: "(2) That the respondent deems himself a refugee-escapee from a Communist-controlled country, to-wit, China; that he cannot return to such area on account of his political opinions."

It further appears that on March 5, 1959, plaintiff also filed with the Immigration and Naturalization Service an application for adjustment of status under Section 245 of the Immigration and Nationality Act. (8 U.S.C.A. § 1255.)

Section 1255(a) reads:

"The status of an alien who was admitted to the United States as a bona fide nonimmigrant may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such ad-

justment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, (3) *an immigrant visa was immediately available to him at the time of his application,* and (4) an immigrant visa is immediately available to him at the time his application is approved. A quota immigrant visa shall be considered immediately available for the purposes of this subsection only if the portion of the quota to which the alien is chargeable is undersubscribed by applicants registered on a consular waiting list." (Emphasis supplied.)

Exhibit B herein, filed by the Government, is a copy of a letter, dated March 6, 1959, addressed to plaintiff's attorney by the Assistant District Director for Travel Control, Chicago District, Immigration and Naturalization Service, and relating to plaintiff's application for status as a permanent resident under Section 245 of the Immigration and Nationality Act. Quoting from the letter:

"Mr. Chan's claim to nonquota status as a refugee-escapee under Section 15 of the Act of September 11, 1957, made in connection with his Section 245 application, has been referred to the Office of Refugee and Migration Affairs, Department of State, and the Department of State has advised that a nonquota immigrant visa is not available to Mr. Chan under Section 15 of the Act of September 11, 1957. He is therefore chargeable to the nonpreference portion of the quota for Chinese Persons, which is heavily oversubscribed.

*"His application for status as a permanent resident under Section 245 of the Immigration and Nationality Act has been rejected on the ground that an immigrant visa was not immediately available to him at the time his application was filed.*

"The application, Form I–507, is being submitted to the Northwest Regional Office of this Service with recommendation that the $25.00 fee submitted with the application be refunded to you." (Emphasis supplied.)

Section 1255(a), above quoted, requires that certain conditions precedent exist before the Attorney General may exercise his discretion to adjust the status of certain aliens. One of those conditions—that "(3) an immigrant visa was immediately available to him at the time of his application"—was absent in the instant case.

Plaintiff alleges that he has been denied due process of law because "certain decisions" were arbitrary and without sufficient evidence to support the findings; that they were capricious, erroneous, contrary to law, and without just cause.

Plaintiff complains that he was denied due process because he was not represented by counsel "at the preliminary stages and at the earlier hearings" and claims that he was therefore prejudiced because he did not have full awareness of his rights.

This court does not overlook the basic principle that the procedural guaranties of the due process clause of the Fifth Amendment apply to aliens as well as to citizens of this country, nor does the court overlook the fact that in many cases an alien's lack of representation by counsel could operate to deny him due process of law. It is the view of this court, however, that the instant case is not one of them.

Section 1252(b) (2) of Title 8 U.S.C.A reads:

"the alien shall have the privilege of being represented (at no expense to the Government) by such counsel, authorized to practice in such proceedings, as he shall choose."

The statute does not say that he "must" be so represented. All that is required is that he be given an opportunity to obtain counsel if he desires.

■ Since the statute specifically says that such representation by counsel shall not be at the expense of the Government, we may assume that all counsel fees must be borne by the alien—regardless of his ability to pay them. An interpretation of the statute which would make mandatory the representation of an alien by counsel could work a hardship on many aliens having insufficient funds with which to employ able counsel.

It is conceivable that were the statute given such an interpretation, some aliens —either through financial inability to obtain counsel or through designed neglect to obtain counsel—might not only delay proceedings but also delay deportation indefinitely.

In the instant case, plaintiff was given an opportunity to obtain counsel but he waived representation.

In the case of United States ex rel. Mustafa v. Pederson, 7 Cir., 207 F.2d 112, Mustafa claimed that he had been denied due process because he had not been represented by counsel at the hearing before the hearing officer. The Seventh Circuit Court of Appeals, in a Per Curiam opinion said:

"The record of the hearing discloses that relator was advised that he was entitled to have counsel represent him, that he could present evidence and cross-examine witnesses, but that he decided to proceed without counsel. * * *

"We hold that petitioner knowingly, understandingly, and voluntarily waived counsel, and that he was accorded a full and fair hearing, and was not denied due process of law."

"Courts may not interfere with administrative determinations unless, upon the record, the proceedings were manifestly unfair, or substantial evidence to support the administrative finding is lacking, or error of law has been committed or the evidence reflects manifest abuse of discretion." United States ex rel. Schlimmgen v. Jordan, 7 Cir., 164 F. 2d 633, 634; United States ex rel. Beck v. Neelly, 7 Cir., 202 F.2d 221; United States ex rel. Rongetti v. Neelly, 7 Cir., 207 F.2d 281.

■ A careful review of the entire record in this case convinces this court that the deportation hearing was fair and in accordance with law. The answers which plaintiff made to questions put to him at the hearing reveal that he was very well informed and understood what was said to him.

The record before the court reflects no abuse of discretion, nor does it evidence arbitrariness, capriciousness or denial of due process of law.

The plaintiff's own admissions made during the hearing—admissions which he clearly made with comprehension—constituted substantive evidence and support the administrative finding of deportability.

In United States ex rel. Vajtauer v. Commissioner of Immigration, 273 U.S. 103, at page 106, 47 S.Ct. 302, at page 304, 71 L.Ed. 560, the court said:

"Upon a collateral review * * * it is sufficient that there was some evidence from which the conclusion of the administrative tribunal could be deduced and that it committed no error so flagrant as to convince a court of the essential unfairness of the trial."

■ Defendant District Director's motion for summary judgment will therefore be granted and the temporary restraining order, heretofore entered herein, will be dissolved.