Warren G. MYERS, Petitioner,

v.

Joseph R. BLALOCK, M. D., Superintendent, Southwestern State Hospital, Marion, Virginia, Respondent.

Civ. A. 90.

United States District Court
W. D. Virginia,
Charlottesville Division.

Feb. 27, 1963.

854

George R. Humrickhouse, Richmond, Va. (court-appointed), for petitioner Myers.

Reno S. Harp, III, Asst. Atty. Gen., Richmond, Va., for Dr. Blalock.

MICHIE, District Judge.

On June 30, 1942 Warren G. Myers shot and killed two distinguished lawyers of the city of Lynchburg, Virginia, T. Gibson Hobbs and T. Franklin Daniel. Myers was indicted by a Grand Jury but before he came to trial he and the Commonwealth's Attorney moved the Corporation Court of the City of Lynchburg for the appointment of a commission to inquire into the mental condition of Myers. The commission seems at first to have been somewhat uncertain as to Myers' mental state but on July 28, 1942 it recommended that Myers be committed to the Southwestern State Hospital at Marion, Virginia, for further study and Myers was so committed. On November 23, 1942 the defendant, Dr. Blalock, who was Superintendent of the hospital and also a member of the commission, and his assistant reported that it was their opinion that Myers was *"now* insane and incompetent" (emphasis supplied). As the other two members of the original commission did not join in this report the matter was again referred to them under date of January 20, 1943 and the commission reported that they were "of the opinion that he *is* insane" (emphasis supplied).

On March 26, 1943 Myers moved the Corporation Court of the City of Lynchburg to empanel a jury to try the issue as to whether he was sane or insane at the time of the commission of the alleged offenses. But the court entered an order denying this motion and also entered an order committing Myers "as a criminal insane" to the criminal department of the Southwestern State Hospital in Marion, Virginia. Myers has been held there ever since.

It has been claimed that Myers also on or about the same date made another motion that he be given a jury trial as to his sanity, presumably as of the time his motion was made, though counsel are not too clear as to this and since there is no record of any such motion it is impossible now to say just what such motion was, if in fact any such motion was made. At any rate, if such a motion was made it must have been overruled as no jury trial was granted.

Myers subsequently filed a petition for habeas corpus in the Circuit Court of Smyth County, Virginia, which was denied. He petitioned the Supreme Court of Appeals of Virginia for a writ of error to that denial but the Supreme Court of Appeals denied the writ saying that the action of the Circuit Court was plainly right. Myers then sought to appeal to the United States Supreme Court, 369 U.S. 815, 82 S.Ct. 843, 7 L.Ed.2d 792, but apparently failed to make a proper application as the petition was denied for "procedural deficiencies."

Myers has now filed a petition for habeas corpus with this court and this court denies the application.

Myers' position is that it was error for the court to refuse him a jury trial as to his sanity, whether at the time of the commission of the offense or at the time of the trial or both is not clear, and that this error unconstitutionally deprived him of his rights so that a federal court should now correct the error. However, aside from the fact that it seems clear that no federal question is involved, it may be doubted that.

there was any error committed by the state court. Myers relied upon § 1045 of the Code of 1919, as amended at the time of his trial and motion in 1943. To the original Code section there was added by the Acts of 1920, p. 510, a proviso which was later amended in 1932.

The 1920 amendment added the following proviso:

"[P]rovided, however, that no person shall, in any case enumerated in this Act, be denied the right of a trial by jury as to his sanity or mentality, if he or she shall so elect."

The persons mentioned in the Act were (1) persons in the hospital for the criminal insane who "shall be restored to sanity" and (2) persons charged with an offense punishable by death who have been adjudged insane both at the time of the offense and when they would otherwise have been tried. Obviously Myers was never in either of the classes mentioned. At the time he was refused a jury trial he was not in the hospital for the criminal insane nôr had he been adjudged insane at the time of the commission of the offense. That is in fact the gravamen of his objection.

By Acts of 1932, p. 41, the persons in class (1) above were redefined to include those who "confined in the department for the criminal insane * * * and charged with crimes subject to be tried therefor, or convicted for crime, shall be restored to sanity." Mr. Myers cannot come within class (1) above mentioned because, at the time his motion was made not only was there no showing that he had been restored to sanity but there was on the contrary a quite recent commission report to the effect that he was insane. And of course he still did not come within class (2) of the original act.

The 1950 Code broadened the provision substantially by providing that "no person shall, in any case be denied the right of a trial by jury as to his sanity or mentality, if he so elects." 1950 Code, § 37–93. But I hardly think that this proviso can be construed to be applicable in cases where the offense and the disposition of the offender occurred long before its enactment so that there could be a wholesale demand of jury trials by all persons who had been legally confined in the Southwestern State Hospital prior to the enactment of the amended proviso.

In any event it would seem clear that this is a matter for the state courts and not for the federal courts. There is no federal constitutional right of the criminal insane to a jury trial. The state courts, including the Supreme Court of Appeals, have held that under Virginia law Myers was not entitled to a jury trial or at least that the failure to give him a jury trial was not such error as would entitle him to a writ of habeas corpus.

Counsel for the petitioner argues that one is denied the equal protection of the laws in violation of the federal constitution if one is not accorded the same rights in a criminal trial as other persons similarly situated. But the holding of the state courts in this case was not simply that Myers was not to be allowed to have a jury trial under the circumstances but was based on their finding that no one similarly situated was so entitled. My attention has been called to no Virginia case in which a prisoner situated similarly to the situation in which Mr. Myers finds himself has been allowed a jury trial and if it could be specifically alleged that such a case exists it would appear in view of the action of the Supreme Court of Appeals in the Myers case that such other case, if one could be found, would have been erroneously decided.

As said in Snyder v. Massachusetts, 291 U.S. 97, at p. 105, 54 S.Ct. 330, at p. 332, 78 L.Ed. 674:

"The Commonwealth * * * is free to regulate the procedure of its courts in accordance with its own conception of policy and fairness unless in so doing it offends some principle of justice so rooted in the

856

traditions and conscience of our people as to be ranked as fundamental."

Surely a jury trial as to sanity cannot be regarded as so rooted. In fact almost the reverse might be thought—that a mandatory provision for a jury trial in such case, rather than a trial by a commission of doctors, might in fact offend rooted principles of justice.

■ There is nothing involved here but the correct application of state law. As said in Eagles v. United States ex rel. Samuels, 329 U.S. 304, 67 S.Ct. 313, 317, 91 L.Ed. 308:

"It is elementary that *habeas corpus* may not be used as a writ of error. Tisi v. Tod, 264 U.S. 131 [44 S.Ct. 260, 68 L.Ed. 590]; Woolsey v. Best, 299 U.S. 1 [57 S.Ct. 2, 81 L.Ed. 3]. The function of *habeas corpus* is exhausted when it is ascertained that the agency under whose order the petitioner is being held had jurisdiction to act. If the writ is to issue, mere error in the proceeding which resulted in the detention is not sufficient. Tisi v. Tod, supra. Deprivation of petitioner of basic and fundamental procedural safeguards, an assertion of power to act beyond the authority granted the agency, and action without evidence to support its order, are familiar examples of the showing which is necessary. See Johnson v. Zerbst, 304 U.S. 458 [58 S.Ct. 1019, 82 L.Ed. 1461]; Bridges v. Wixon, 326 U.S. 135, 149 [65 S.Ct. 1443, 89 L.Ed. 2103]. But it is not enough to show that the decision was wrong, Tisi v. Tod, supra, or that incompetent evidence was admitted and considered. [United States ex rel.] Vajtauer v. Commissioner, 273 U.S. 103 [47 S.Ct. 302, 71 L.Ed. 560]. If it cannot be said that there were procedural irregularities of such a nature or magnitude as to render the hearing unfair, Bridges v. Wixon, supra, [326 U.S.] p. 156 [65 S.Ct. p. 1453], or that there was no

evidence to support the order, [United States ex rel.] Vajtauer v. Commissioner, supra, the inquiry is at an end."

See also Snead v. Smyth, 273 F.2d 838 (4th Cir., 1959).

The petition for the writ of habeas corpus will be denied.