MATTER OF A——

In DEPORTATION Proceedings

A-8027281

*Decided by Board January 24, 1958*

Evidence—Deportation charge under section 241(a)(1) of the 1952 act based on excludability at entry because of prior attack of insanity need not be supported by U.S.P.H.S. medical certificate.

United States Public Health Service medical certificate, prescribed by statute to sustain exclusion order against alien applying for admission, is not required in a deportation proceeding to establish alien's inadmissibility at time of entry because of prior attack of insanity.

CHARGE:

Order: Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable at time of entry under section 212(a)(3)—One or more attacks of insanity

BEFORE THE BOARD

Discussion: The case is before us by certification. The special inquiry officer ordered the respondent deported on the charge stated above and certified the case to this Board for review. Respondent, a 29-year-old married female, a native and national of Cuba, was admitted to the United States for permanent residence on March 1, 1954. From April 24, 1956, until October 5, 1956, she was a patient in the Creedmore State Hospital in New York where her condition was diagnosed as dementia praecox, catatonic. She received electric shock treatments and chemical therapy. After discharge from the hospital she went to Cuba to visit her parents. She returned from that visit on March 24, 1957, and was readmitted as a returning lawful resident. The issue is whether at the time of her reentry, respondent was a person who had had an attack of insanity.

To establish deportability, the Service relies upon a clinical summary which was made in connection with the respondent's hospitalization at the Creedmore State Hospital. Counsel had no objection to the admission of this record. Counsel argues that the clinical summary is not sufficient. It is his belief that respondent cannot be found to have been a person excludable at the time of her entry unless the rules of law and evidence applicable to an *exclusion* proceeding are applied.

12

An alien applying for admission who is thought to be excludable because she has had an attack of insanity must be examined by a medical officer of the United States Public Health Service from whose certification, if unfavorable, an appeal may be taken to a Board of Medical Officers of the United States Public Health Service at which time an alien may introduce an expert witness (sections 234—236, Immigration and Nationality Act; 8 U.S.C. 1224—1226). Counsel believes that this procedure must be followed. It is argued that because of the refusal of the Government to follow the procedures which would have applied had the alien applied for admission, she is being deprived of due process of law. Counsel has submitted a certificate from Dr. C—— who examined the respondent on August 21, 1957. This physician, termed by counsel as a "psychiatrist," states that it is his opinion that the respondent did not suffer an attack of insanity. It appears that his opinion is based upon an examination of the clinical summary and a personal interview with the respondent.

Congress has set up an exclusion procedure and a deportation procedure (sections 234—236, 242, Immigration and Nationality Act; 8 U.S.C. 1224—1226, 1252). As to each procedure, Congress has furnished separate detailed instructions. These instructions differ sharply in several ways. In an exclusion case where the cause of exclusion is one of certain grounds relating to mental condition, no appeal can be taken from the order of the special inquiry officer requiring exclusion. In the deportation proceeding, on the other hand, even though the identical ground is used to order the alien's deportation, there is an appeal. Another example, in exclusion proceedings the burden of establishing admissibility is upon the alien; in deportation proceedings the burden of establishing deportability is upon the Government (section 291, Immigration and Nationality Act; 8 U.S.C. 1361). Neither administrative nor judicial authorities have ever acted as if it were necessary in deportation proceedings to do all those things which are required to exclude an alien when it is merely a question as to whether he had been excludable at the time he applied for admission. For example, to exclude a person on the ground that his entry was prejudicial to the United States, a certain procedure had to be followed. If, however, the alien succeeded in entering the United States, he could be deported on the ground that he had been excludable at the time of entry as one whose entry was prejudicial without following that procedure (*United States ex rel. Vajta* v. *Watkins*, 179 F.2d 137 (C.A. 2, 1950)).

*Canciamilla* v. *Haff*, 64 F.2d 875 (C.A. 9, 1933), involved the deportation of an alien who was charged with having been an epileptic at the time of entry and who claimed that the evidence did not support the charge. In support of the charge proof was made of the

13

fact of the respondent's admission to a hospital as an epileptic about a year-and-a-half after his last entry and the report of the hospital made in connection with that matter was submitted. The court held that it was proper to find that Canciamilla had been epileptic at the time of entry.

In *United States* v. *Flores-Rodriguez*, 237 F.2d 405, C:A. 2, a deportation proceeding, the court accepted a Government contention that an alien had been excludable at time of entry as a person of constitutional psychopathic inferiority, even though no certification of such condition had been made by the United States Public Health Service.

In *Matter of P——*, A-8312899, 7 I. & N. Dec. 258, we held contention such as that advanced by counsel was "unresponsive."

It is, therefore, proper to determine in this deportation proceeding whether the respondent suffered an attack of insanity prior to her last entry, and it is not mandatory that the alien be interviewed by the doctors of the United States Public Health Service although in many cases this may be a helpful course (*United States ex rel. Leon* v. *Shaughnessy*, 143 F. Supp. 270, S.D.N.Y., affd. *sub. nom. United States ex rel. Leon* v. *Murff*, 250 F. 2d 436, C.A. 2, 1957). The doctors who observed the respondent for the period of about 5 months during which she was confined diagnosed the respondent as suffering from insanity. They have set forth in detail their reasons for their diagnosis. The physician who approved the certification and forwarded it under his name to the Immigration Service stated that he had 10 years of experience in cases such as concerned the respondent and that his experience had been with the Department of Mental Hygiene in New York State. Seven different doctors were involved in the care and treatment of the respondent at the hospital. None questioned the finding that she was insane. Opposed to this we have the statement of a physician whose qualifications are not shown and whose opinion it is that the respondent suffered from disassociative reaction, a neurotic illness rather than a psychosis. (Disassociative reaction is regarded by the Public Health Service as a noncertifiable condition unless it is of such severity as to be certified as a mental defect.) The respondent's physician has not given a definition of "disassociative reaction" other than to indicate that a brief episode of confusion and memory loss following a series of psychologically important stresses would fall under that category. He states that the respondent would display residual symptoms if she had been through a psychosis. However, he has failed to point out the diagnostic differences between the psychosis which it is claimed the respondent suffered and the neurosis which he believes she endured. We do not believe that under these circumstances the certificate of Dr. C—— raises a serious

14

question as to the correctness of the diagnosis made by the physicians of the mental institution where the respondent was confined.

Respondent was represented by counsel of her own choosing. She had opportunity to testify, to call witnesses and present evidence in her own behalf and to cross-examine witnesses against her. We find the procedure followed was adequate. Deportation was properly found.

**Order:** It is ordered that no change be made in the order of the special inquiry officer requiring respondent's deportation.